[Cite as *In re J.C.*, 2011-Ohio-4933.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.C. AND J.C.

C.A. No.     25793

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN08-11-0940
            DN08-11-0941

DECISION AND JOURNAL ENTRY

Dated: September 28, 2011

WHITMORE, Presiding Judge.

{¶1}    Appellant, Amber C. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her two minor children in the legal custody of their foster parents. This Court affirms.

I

{¶2}    Mother is the natural mother of J.C., born February 18, 2006, and J.C., born February 8, 2007. On November 21, 2008, Summit County Children Services Board ("CSB") filed complaints alleging that J.C. and J.C. were dependent children because Mother had violated a no contact order by allowing them to have unsupervised contact with their father, who had a history of domestic violence against Mother. The father of the children later relinquished his parental rights and is no longer involved in this case.

{¶3}    The children were adjudicated dependent and placed in the temporary custody of CSB. Less than two months later, CSB moved for permanent custody of both children, alleging

that they had been in its temporary custody for at least 12 of the prior 22 months, based primarily on the time they spent in its temporary custody in a prior dependency case. Following a hearing, the trial court terminated Mother's parental rights and placed the children in the permanent custody of CSB. This Court reversed that decision on appeal, however, because the record failed to demonstrate that the children had been in CSB's temporary custody for the requisite 12-month period at the time CSB filed its permanent custody motion. See *In re J.C.*, 9th Dist. No. 25006, 2010-Ohio-637, at ¶12-14.

{¶4} On remand, CSB filed a new motion for permanent custody. Following a hearing on that motion, the trial court denied CSB's request for permanent custody and instead extended temporary custody because Mother had substantially complied with the requirements of the case plan. During the next several months, Mother began intensive parent-child therapy with the children and eventually was given overnight visitation with them at her home. Mother worked with the therapist to learn appropriate ways to handle her children's behavioral problems.

{¶5} Mother eventually filed a motion for legal custody of J.C. and J.C. Although Mother's ability to care for the children had improved, CSB and the guardian ad litem did not believe that she had the necessary tools to provide a home for them on a full-time basis. Therefore, CSB filed an alternative dispositional motion, requesting that J.C. and J.C. be placed in the legal custody of their foster parents. Following a hearing on the competing motions, the trial court placed the children in the legal custody of the foster parents and granted Mother standard visitation rights. Mother appeals and raises one assignment of error.

II

<u>Assignment of Error</u>

"THE DECISION OF THE TRIAL COURT TO GRANT LEGAL CUSTODY OF THE CHILDREN TO A NON-PARENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶6}    Mother argues that the trial court erred in placing her two children in the legal custody of the foster parents rather than in her legal custody. We disagree.

{¶7}    Mother's argument focuses primarily on whether CSB developed an adequate plan to reunify her with her children. We will not reach that issue, however, because Mother did not assign error to the agency's reunification efforts, nor did she raise that challenge in the trial court. Instead, her challenge is limited to whether the trial court properly granted the foster parents' motion for legal custody.

{¶8}    Emphasizing her constitutional rights as a parent, Mother implies that the trial court was required to give her motion for legal custody preference over the motion of the foster parents. Following an adjudication of neglect, dependency, or abuse, however, the juvenile court's determination of whether to place a child in the legal custody of a parent or a non-parent is based solely on the best interest of the child. See *In re D.R.*, 9th Dist. No. 21218, 2003-Ohio-2852, at ¶17; *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus (holding that an adjudication of abuse, dependency, or neglect is an implicit determination of the parent's unsuitability). Because Mother's parental rights were not terminated, this inquiry did not focus on Mother's rights as a parent, but instead centered on how best to provide her children with a safe, stable, and secure home. See *In re C.R.* at paragraph one of the syllabus.

{¶9}    "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. No. 21707, 2004-Ohio-110, at ¶23, citing *In re Fulton*, 12th Dist. No.

CA2002-09-236, 2003-Ohio-5984, at ¶11. The juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead "leaves intact 'residual parental rights, privileges, and responsibilities.'" *In re Shepherd* (Mar. 26, 2001), 4th Dist. No. 00CA12, at *7, quoting R.C. 2151.011(B)(19). The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of that discretion. *In re M.S.*, 9th Dist. No. 22158, 2005-Ohio-10, at ¶11. An abuse of discretion implies that the trial court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶10} J.C. and J.C. were almost four and five years old at the time of the legal custody hearing and had spent most of their lives outside Mother's custody. Each child had been diagnosed with adjustment disorder and oppositional defiant disorder and each also suffered from developmental delays. Each child's adjustment disorder stemmed from repeatedly moving in and out of Mother's custody because of domestic violence and unstable living conditions. Each child was removed from Mother's custody at the age of approximately three months old, and was later returned to her care only to be removed again. The older J.C. had been in and out of Mother's custody three different times during his short life and, consequently, harbored a significant amount of anger toward Mother.

{¶11} The caseworker and one of the counselors described the children as "high-maintenance" because they require significant patience and energy from their caregivers. They do not take direction very well, tend to be very demanding and defiant, and often act on their anger and aggression. The counselors explained that J.C. and J.C. need an environment that

provides consistent structure, firm boundaries, and caregivers that offer nurturing support and model appropriate behavior.

{¶12} Mother had made gradual progress on the case plan during the two years that the current case was pending. She ended her violent relationship with the children's father, obtained stable employment and housing, and participated in anger management classes, parenting classes, and counseling. At the time of the hearing, Mother was attending individual counseling and had recently begun intensive parent-child therapy with the children. She was attending her joint sessions with the children regularly, but her attendance rate at individual counseling was estimated at fifty percent.

{¶13} Although the evidence demonstrated that Mother was making progress with the children, she was still an inexperienced parent and was not yet demonstrating that she could consistently implement the parenting skills that she had learned in counseling and parenting classes. In joint therapy, Mother was learning how to provide boundaries and appropriate means of discipline for the children. Mother admitted that she sometimes spanked the children when they misbehaved, so the counselor was working with her to use alternate forms of discipline. She explained that physical discipline was not appropriate or effective for children with anger issues because it only reinforces their anger. The counselor further testified that Mother listened to her suggestions and was making progress in their sessions, but Mother had met with her only a few times and would need continued counseling. The counselor also expressed concern that Mother did not have the necessary support system in place to provide ongoing care for the children.

{¶14} The caseworker and guardian ad litem did not believe that Mother had the ability to provide day-to-day care for the children at that time. Each testified that Mother sometimes

seemed overwhelmed by the children's inappropriate behavior and would either resort to physical discipline or give in to their demands, rather than standing firm in her parental role and providing appropriate discipline. They further noted concern about Mother's desire to end the children's relationship with the foster parents and emphasized that Mother seemed motivated by her own feelings of jealousy toward the foster parents, rather than what was best for her children.

{¶15} On the other hand, several witnesses testified that the foster parents were providing J.C. and J.C. with a consistent and structured environment and were giving them the nurturing support that they needed. The children had lived with the same foster family each time they were removed from Mother's custody and had spent the majority of their lives there. By the time of the hearing, the older J.C. had lived with the foster family for a total of 47 months of his 58-month life and the younger J.C. had lived with them for 37 months of her 46-month life. The children were attached to the entire family and considered it to be their only home.

{¶16} The foster parents had demonstrated the ability to provide a stable environment for J.C. and J.C. on a daily basis. The children were enrolled in counseling and an integrated preschool and were making improvements with both their behavioral problems and their developmental delays. Numerous witnesses testified about how well the children were doing in the foster home. In sharp contrast to their observations about Mother becoming flustered and responding inappropriately to the children's misbehavior, the caseworker and guardian ad litem gave examples of how calm the foster mother was with both children and how effectively she redirected their inappropriate behavior.

{¶17} The children had told others that they want to stay with the foster family. They like to visit with Mother, but look forward to returning to the foster home. The foster parents had been facilitating visitation between Mother and the children and would continue to do so.

The guardian ad litem recommended that the foster parents receive legal custody of the children and that Mother continue to have unsupervised visitation with them, provided that she remains involved in counseling. She emphasized that such a placement would allow Mother's relationship with the children to continue to grow, yet the children would not be uprooted from the environment that they clearly regard as their primary home.

{¶18} Given the evidence presented at the hearing, the trial court reasonably concluded that legal custody to the foster parents was in the best interests of J.C. and J.C. The assignment of error is overruled.

## III

{¶19} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

DICKINSON, J.
CONCURS

MOORE, J.
CONCURS, SAYING:

{¶20} I concur with the majority, but write separately to emphasize that this case did not turn on the fact that Mother occasionally spanked her children. There is no evidence in the record that Mother's use of corporal punishment had been excessive or caused harm to her children. Although CSB and its experts are of the opinion that alternate means of discipline would have been more appropriate, "Ohio law has long recognized that a parent has the right to administer reasonable and appropriate corporal punishment." *In re Jandrew* (Dec. 29, 1997), 4th Dist. No. 97 CA 4, at *6. The state is warranted in intervening only when the punishment exceeds the bounds of moderation. Id.; see, also, *State v. Suchomski* (1991), 58 Ohio St.3d 74, 75 (emphasizing that a child has no "legally protected interest which is invaded by proper and reasonable parental discipline" and holding that a parent does not violate R.C. 2919.25 unless the discipline causes physical harm).

{¶21} Notwithstanding Mother's right to discipline her children, however, the standard that applied to the competing legal custody motions in this case was the best interests of the children. On balance, because the record supports the trial court's finding that the best interests of the children are served by legal custody with the foster parents, I concur.

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.