[Cite as *In re A.K.*, 2012-Ohio-4430.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.K.
      T.K.
      M.K.
      A.K.

C.A. No.     26291

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 11-02-126
                 DN 11-02-127
                 DN 11-02-128
                 DN 11-02-129

DECISION AND JOURNAL ENTRY

Dated: September 28, 2012

MOORE, Judge.

**{¶1}** Appellant, Kandis A. ("Mother"), appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed four of her minor children in the legal custody of a paternal aunt. Because the trial court failed to appoint a guardian ad litem to represent the best interests of the children, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.

I.

**{¶2}** Mother is the natural mother of A.K., born October 27, 2001; M.K., born January 26, 2003; T.K., born July 2, 2004; and A.K., born February 2, 2006. Although Mother also has a younger child who was involved in the trial court proceedings, he is not at issue in this appeal.

**{¶3}** On February 22, 2011, Summit County Children Services Board ("CSB") filed complaints, alleging that Mother's four children were dependent due to Mother's inability to

meet their basic needs. The complaints specifically alleged that Mother was homeless and had problems controlling her impulsive behavior and her use of drugs and/or alcohol, which had led to her involvement with the criminal justice system. Mother later stipulated that all four children were dependent based on the allegations in the complaint and agreed they should be placed in the temporary custody of a paternal aunt, with an order of protective supervision by CSB.

{¶4} Mother further agreed to the requirements of the case plan. The reunification goals of the case plan focused, in part, on Mother addressing her drug and alcohol use, her impulsive behavior, and her involvement with the criminal justice system. On July 15, 2011, CSB moved for a change of disposition from temporary custody with the aunt to full legal custody with the aunt. It alleged that Mother had been arrested and was facing felony charges for aggravated drug possession. The agency further maintained that Mother had made minimal progress on the goals of her case plan and had informed the agency that she was unable to care for the children at that time.

{¶5} On August 9, 2011, the trial court received a letter from Mother that expressed opposition to CSB's motion. Because she was still incarcerated, Mother requested permission to participate in the legal custody hearing either via video conference or through arranged transportation to the courthouse. Mother also requested that the trial court appoint counsel to represent her at the hearing. Mother emphasized her desire to participate in the hearing so that she could "speak with [her] counsel to know the best way to be able to keep [her] children only in temporary custody."

{¶6} Mother appeared at the hearing, with counsel, and testified in opposition to the motion. Mother testified that her criminal charges had been resolved, she would not be going to prison, and would soon be released from jail. She explained that she had started to work on the

reunification goals of the case plan and was prepared to complete the remaining requirements after her release from jail. The magistrate also heard testimony from the caseworker and the aunt, as well as another relative who then had custody of the youngest child.

{¶7} Following the hearing, the magistrate recommended that the trial court place Mother's four children in the legal custody of the aunt. The magistrate found that Mother had failed to adequately address the issues set forth in the case plan and that it was in the best interests of the children to be placed with the aunt.

{¶8} Mother filed objections to the magistrate's decision. Among other objections, she argued that the trial court erred by failing to appoint a guardian ad litem to represent the best interests of the children and/or to ascertain the wishes of the children in camera. She further asserted that the evidence did not support the magistrate's best interest determination. The trial court overruled Mother's objections, adopted the magistrate's decision, and entered judgment. Mother appeals and raises two assignments of error. We will confine our review to her second assignment of error, as it is dispositive.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED IN NOT APPOINTING A GUARDIAN AD LITEM FOR THE []CHILDREN, WHICH PREJUDICED THE []CHILDREN'S BEST INTEREST AND MOTHER'S RIGHT TO PARENT HER CHILDREN.

{¶9} In her second assignment of error, Mother argues that the trial court erred by failing to appoint a guardian ad litem on behalf of the children. Although Mother did not raise this issue at the time of the hearing before the magistrate, she did specifically object to the magistrate's decision on this basis. Therefore, despite the agency's argument to the contrary, Mother has preserved the issue for appellate review. *See* Juv.R. 40(D)(3)(b)(iv).

{¶10} Through her objections to the magistrate's decision, Mother argued that the trial court erred in failing to appoint a guardian ad litem pursuant to Juv.R 4 because a guardian was necessary "to meet the requirements of a fair hearing." Juv.R. 4(B)(8). The trial court overruled Mother's objection to its failure to appoint a guardian ad litem, reasoning that, "[a]lthough there is not a [g]uardian ad litem assigned to the children, it is reported that they are happy in their current placement and their considerable improvement since living with Aunt further supports this assertion."

{¶11} Mother asserts that the trial court erred in overruling her objection to the lack of a guardian ad litem because it had improperly based its best interest determination solely on the testimony of the caseworker and the aunt, both of whom who were directly interested in the outcome of these proceedings. She argues that the fundamental fairness of these contested legal custody proceedings required that the trial court be informed about the children's best interests by a neutral and detached guardian ad litem. We agree.

{¶12} Generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. No. 24150, 2008-Ohio-5232, ¶ 9. However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. Here, the assignment of error challenges the trial court's failure to appoint a guardian ad litem pursuant to the mandatory requirements of R.C. 2151.281 and Juv.R. 4. Therefore, this issue presents a question of law, which we review de novo, affording no deference to the conclusion of the trial court. *In re A.G.B.*, 173 Ohio App.3d 263, 2007-Ohio-4753, ¶ 11 (4th Dist.); *see also Lorain Cty. Child Support Enforcement Agency v. Burnett*, 9th Dist. No. 09CA009566, 2009-Ohio-5160, ¶ 9.

{¶13} We begin by emphasizing that the circumstances of this case are somewhat unusual because CSB filed complaints in this case that alleged only that the children were dependent pursuant to R.C. 2151.04, and the trial court did not appoint a guardian ad litem to represent the children. Had CSB also alleged that the children were neglected and/or abused, there would be no dispute that the trial court would have been required to appoint a guardian ad litem. The explicit terms of R.C. 2151.281(B)(1) require the juvenile court to appoint a guardian ad litem for the child in "any" proceeding alleging abuse or neglect.

{¶14} In cases alleging only dependency, however, the requirement to appoint a guardian ad litem for the children is less clear. R.C. 2151.281 includes no blanket requirement that a guardian ad litem be appointed in every case alleging dependency. *In re Barzak*, 24 Ohio App.3d 180, 183 (11th Dist.1985). However, R.C. 2151.281(B)(1) has been cited to include dependency cases in addition to neglect and abuse cases. *In re C.T.*, 119 Ohio St.3d 494, 2008-Ohio-4570, ¶ 6; *In re Howard*, 119 Ohio App.3d 201, 206, fn.2 (1st. Dist.1997). The apparent confusion about whether a guardian ad litem is also mandated in dependency cases may explain the lack of case law on this issue.

{¶15} As stated in R.C. 2151.281 and Juv.R. 4, the juvenile court's obligation to appoint a guardian ad litem in cases alleging only dependency is a qualified one, which depends upon the facts and circumstances of each case. *See* R.C. 2151.281 and Juv.R. 4. Of particular relevance here, R.C. 2151.281(G) requires the trial court to appoint a guardian ad litem for the children in a dependency case when there is a conflict of interest between the children and their parents. Juv.R. 4(B)(2) and Juv.R. 4(B)(8) further require the trial court to appoint a guardian ad litem for the children when the interests of children and parents "may" conflict or when a guardian ad litem is necessary "to meet the requirements of a fair hearing." Because the "conflict" and "fair

hearing" provisions arguably applied to this case for different reasons, we will address them separately.

### Conflict between Mother and the Children

{¶16} R.C. 2151.281(G) requires the appointment of a guardian ad litem in a dependency case if "there is a conflict of interest between the child and the child's parents[.]" Juv.R. 4(B) more broadly requires the appointment of a guardian ad litem in any juvenile case in which "[t]he interests of the child and the interests of the parent *may* conflict." (Emphasis added.). Although this Court found no case law that specifically construed these "conflict" provisions within the context of a dependency case, there is identical "conflict" language in R.C. 2151.281(A)(2), which requires the appointment of a guardian ad litem for the child within the context of a delinquency case. Many courts, including this Court, have construed the requirement of R.C. 2151.281 (that a guardian ad litem is required when the court finds "that there is a conflict") together with the language of Juv.R. 4 (that appointment is required whenever there "may be" a conflict), to require that a guardian ad litem be appointed when the record demonstrates that there is a "strong possibility" that the interests of the child and the interests of the parent conflict. *E.g*., *In re Sappington*, 123 Ohio App.3d 448, 452-453 (2d Dist.1997); *In re J-M.W*., 9th Dist. Nos. 23066 and 23144, 2006-Ohio-6156, ¶ 10-11.

{¶17} We can find no reason why these constructions of the "conflict" language in R.C. 2151.281 and Juv.R. 4(B)(2) should not apply to cases in which dependency is alleged, given that they interpreted identical language within the same statute and juvenile rule. Consequently, in a dependency case, where the record demonstrates the "strong possibility" of a conflict between the interest of the child and the parent, the juvenile court is required by R.C. 2151.281 and Juv.R. 4(B)(2) to appoint a guardian ad litem to represent the child. The question then

becomes whether the record in this case demonstrated the strong possibility of a conflict between the interests of the children and the interests of Mother.

{¶18} To determine whether the requisite "conflict" existed within the context of this dependency case, it is helpful to consider the rationale for conditioning the requirement of a guardian ad litem on the existence of a conflict between child and parent. Requiring the demonstration of a conflict presumes that, in most families, the interests of the child and parent will be aligned, because the parent naturally loves and nurtures her child and is in the best position to protect and represent the child's best interest. *E.g.*, Maldonado, *When Father (or Mother) Doesn't Know Best: Quasi-Parties and Parental Deference After Troxel v. Granville*, 88 Iowa L.Rev. 865, 925 (2003). The constitutional right of a parent to raise and care for his or her child encompasses the notion that a "fit" parent will act in the best interest of the child. *E.g.*, *Troxel v. Granville*, 530 U.S. 57, 65, 69 (2000). The *Troxel* court emphasized that, "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69.

{¶19} By removing Mother's children from her home and later adjudicating them as dependent children, however, the trial court implicitly determined that Mother was not a suitable parent and that she was not making decisions that were in the best interests of her children. *See In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 22. A divergence between the interests of the children and parent will likely arise in most dependency cases if the children are removed from the parent's home, as, by that involuntary separation of the children from their parent and uncertainty about whether reunification will occur, "the potential exists for the interests of child[ren] and parent to diverge dramatically." Ross, *The Tyranny of Time: Vulnerable Children,*

*"Bad" Mothers, and Statutory Deadlines in Parental Termination Proceedings,* 11 Va.J.Soc.Poly&L. 176, 176 (2004). Consequently, one legal commentator stressed that appointment of a guardian ad litem should be mandatory in "'practically all neglect or dependency proceedings'" as the conduct of the parent toward the child is the primary interest at issue in the case and the appearance of a conflict will "'almost always'" exist. [1] *In re Myer*, 5th Dist. No. 80-CA-10, 1981 WL 6316, *2-3 (June 16, 1981), quoting Judge Don Young in Anderson, *Ohio Family Law*, Section 4.12 (3d Ed.1996).

{¶20} In this dependency case, however, the record reveals that, at the beginning of the case, the interests of Mother and the children may not have been in conflict because Mother acknowledged her inability to meet the needs of the children and agreed to the removal and *temporary* custody arrangement with the aunt. Mother stipulated to the adjudications of dependency and agreed that the children should be temporarily placed with the aunt.

{¶21} The strong possibility of a conflict between the interests of the children and Mother became apparent on the record, however, after CSB filed the motion for legal custody and Mother informed the trial court that she was opposed to that permanent disposition. Mother sent a letter to the court to request that she be permitted to appear at the hearing, with appointed counsel, to oppose the motion. At that point, Mother was focused on opposing the motion and protecting her own parental rights, a position that did not necessarily represent her children's best interests. Through Mother's written opposition to the legal custody motion, the record demonstrates that there was the strong possibility of a conflict between the interests of the

---

[1] Prior to 1975, R.C. 2151.281 included no absolute requirement for a guardian ad litem in neglect and abuse cases, so the "conflict" provisions of R.C. 2151.281 and Juv.R. 4 were also applied in neglect cases.

children and the interests of Mother, which required the trial court to appoint a guardian ad litem to investigate and report to the court on the best interests of the children.

**Fair Hearing**

**{¶22}** In addition to the apparent conflict between the interests of the children and Mother, a guardian ad litem was necessary to protect the fundamental fairness of the legal custody hearing. Mother focused her argument on Juv.R. 4(B)(8), which requires a trial court to appoint a guardian ad litem when it is "otherwise necessary to meet the requirements of a fair hearing." The hearing at issue was a dispositional hearing for legal custody of the children. Although this Court found no case law on the requirement of a guardian ad litem at a contested legal custody hearing following an adjudication of dependency, the lack of case law may simply be due to the fact that a guardian ad litem is typically appointed prior to the legal custody hearing, so the issue has not been litigated. *See, e.g.*, *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899; *In re J.C.*, 9th Dist. No. 25793, 2011-Ohio-4933; *In re J.F.*, *In re B.H.*., 8th Dist. No. 95794, 2011-Ohio-1967; 11th Dist. No. 2010-T-0029, 2011-Ohio-3295; *In re Reeher*, 7th Dist. No. 02-BE-38, 2003-Ohio-3470.

**{¶23}** Although a disposition of legal custody is less drastic than permanent custody because it does not completely sever parental rights, it "potentially terminates a parent's constitutional right to custody of her child[ren] because that placement "'is intended to be permanent in nature.'" *In re A.A.*, 9th Dist. No. 25253, 2010-Ohio-5735, ¶ 7, quoting R.C. 2151.42. For that reason, this Court has held that a legal custody proceeding is "sufficiently analogous" to a permanent custody proceeding and that the parents should have the same due process right to cross-examine the guardian ad litem that they would be afforded at a permanent custody hearing. *Id.*

**{¶24}** Certainly, the children should also be afforded analogous procedural protections at a legal custody hearing. Had this been a hearing on a permanent custody motion, the appointment of a guardian ad litem would have been explicitly mandated by R.C. 2151.281(B)(1). Although R.C. 2151.281 does not mandate that a guardian ad litem be appointed to represent the children in other contested permanency proceedings, the same principles of due process and fairness would appear to apply to contested legal custody hearings.

**{¶25}** In addition to the fact that a legal custody hearing has permanent implications for the children and this family, unlike a hearing on a permanent custody motion, there is no specific statutory "test" to guide the trial court's legal custody decision. *See, e.g.*, *In re N.P.*, 9th Dist. No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. No. CA2002-09-263, 2003-Ohio-5984, ¶ 11. Although it is agreed that the "best interest" of the children will control, courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the children. *E.g.*, *In re A.V.O.*, 9th Dist. Nos. 11CA010115, 11CA010116, 11CA010117, and 11CA010118, 2012-Ohio-4092; *In re G.M.*, 8th Dist. No. 95410, 2011-Ohio-4090, ¶ 15-16; *In re B.G.*, 9th Dist. No. 24187, 2008-Ohio-5003, ¶ 9-13. The lack of specific factors to guide the trial court's best interest determination only magnifies the need to have the best interests of the children thoroughly investigated and reported to the court by a guardian ad litem.

**{¶26}** In this case, the trial court indicated that it had applied the best interest factors set forth in R.C. 2151.414(D), which explicitly required it to consider the wishes of the children as expressed by the children themselves or through their guardian ad litem. R.C. 2151.414(D)(1)(b); *In re T.A.*, 9th Dist. No. 22954, 2006-Ohio-4468, ¶ 17. The trial court had

no evidence before it of the children's wishes, however, because it did not interview any of them in camera, and there was no guardian ad litem to speak on the children's behalf.

{¶27} Rather than receiving evidence about the children's wishes or best interests from a guardian ad litem or any of the children themselves, the only evidence before the court came from the testimony of the CSB caseworker, the aunt, and Mother, none of whom was authorized to speak on behalf of the children. This Court emphasized in *In re Smith*, 9th Dist. No. 20711, 2002 WL 5178, *5-6 (Jan. 2, 2002), that only the guardian ad litem is authorized to testify on behalf of the children and express their wishes and desires. Moreover, although the guardian ad litem is permitted to express the wishes of the children through statements made by the children, the court's consideration of other out-of-court statements may not be used to prove the truth of the matters asserted, but, instead, may be used for the limited purpose of informing the court as to why the guardian reached his recommendation. *See Sypherd v. Sypherd*, 9th Dist. No. 25815, 2012-Ohio-2615, ¶ 12-13.

{¶28} The only evidence about the children came from the testimony of the caseworker, the aunt, and Mother, each of whom was interested in the outcome of the legal custody hearing. As this Court further stressed in *Smith*, the guardian ad litem has the significant role of bringing a viewpoint to the trial court at a dispositional hearing that is "neutral and detached from the parties" to the case. *Smith* at *6. The explicit role of the guardian ad litem is to investigate the children's best interests as an impartial outsider to the proceedings and assist the trial court in determining whether a dispositional order is in their best interests. Sup.R. 48(A), (B)(1), and (D). The court in *Myer* emphasized the unique role of the guardian ad litem and the importance of the guardian's impartial voice to the determination of best interest of the children at dispositional proceedings. "The guardian ad litem is not simply a legal mechanic" but has the

responsibility "'to protect the best interest of the child.'" *Myer*, 1981 WL 6316, at \*4, quoting R.C. 2151.281. "Surely, that function ripens into its highest expectation at the dispositional phase of the juvenile process." *Myer* at \*4.

{¶29} Because the trial court failed to consider any evidence from a guardian ad litem or the children directly, the children were denied their right to have a voice at this dispositional hearing that determined their permanent placement. Consequently, we cannot conclude that the trial court's failure to appoint a guardian ad litem was harmless error. *Compare In re N.G.,* 9th Dist. No. 12CA010143, 2012-Ohio-2825, ¶ 28 (holding that the absence of evidence of child's wishes was not reversible error in permanent custody appeal because there was substantial evidence on the remaining mandatory factors and the guardian ad litem had investigated the case and had given a report to the trial court about the child's best interests); *In re Todd*, 7th Dist. No. 06-JE-35, 2007-Ohio-1410, ¶ 25-26 (holding that the failure to appoint guardian ad litem due to conflict of interest between child and parent was not plain error because the magistrate interviewed the child in camera).

{¶30} Given the circumstances in this case, we must conclude that the trial court committed reversible error by failing to appoint a guardian ad litem to represent the best interests of the children. At the latest, a guardian should have been appointed for the children when CSB moved to have the children placed in the legal custody of the aunt and Mother contested that motion. At that point, a conflict between the interests of the children and Mother became apparent and it was also necessary to the fairness of the contested legal custody hearing that the children's best interests be thoroughly investigated and reported to the court by a neutral and detached guardian ad litem. Accordingly, Mother's second assignment of error is sustained.

**ASSIGNMENT OF ERROR 1**

THE DECISION OF THE TRIAL COURT TO PLACE THE K. CHILDREN IN
THE LEGAL CUSTODY OF [AUNT] WAS AGAINST THE BEST INTEREST
OF THE K. CHILDREN.

**{¶31}** Based upon our disposition of Mother's second assignment of error, her first assignment of error has been rendered moot and we need not address it.  App.R. 12(A)(1)(c).

III.

**{¶32}** Mother's second assignment of error is sustained.  Her first assignment of error was not addressed because it is moot.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

 

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶33} I concur in the judgment of the majority. I would reverse and remand the matter for the trial court to consider in the first instance whether there is a conflict of interest between the child and the child's parent within the meaning of R.C. 2151.281(G) or whether the interests of the child and the interests of the parent may conflict as set forth in Juv.R. 4(B).

APPEARANCES:

MADELINE LEPIDI-CARINO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

GREGORY A. PRICE, Attorney at Law, for Appellee.