[Cite as *In re J.M.*, 2019-Ohio-3716.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NOS. CA2018-06-124<br>CA2018-06-125 |
| J.M., et al. | : | |
| | : | O P I N I O N<br>9/16/2019 |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2016-0171

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children's Services

Garrett Law Offices, Dawn S. Garrett, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, for appellee, mother

Lorraine M. Search, 6 S. 2nd Street, Suite 309, Hamilton, Ohio 45011, for appellant

Carol A. Garner, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, guardian ad litem

**M. POWELL, J.**

{¶ 1} Father appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, which awarded legal custody of Father's biological children, J.M. and M.M., to their maternal grandparents. For the reasons discussed below, this court affirms

the award of legal custody.

{¶ 2}  In May 2016, Butler County Children Services ("BCCS" or "the agency") filed complaints alleging that J.M. and M.M. were dependent children and requesting that the court grant the agency temporary custody.  The complaints alleged that J.M. and M.M., then two years old and four years old, respectively, had been found outside their home, unsupervised.  Mother and her boyfriend were found unconscious inside the home.  The boyfriend had an open BCCS case and his children had been removed from him.  The children were found playing near drug needles.  Father was alleged to be the perpetrator of domestic violence against Mother and a crack cocaine user.  Based on these allegations, the court issued an emergency ex parte order that placed the children in BCCS' temporary custody.

{¶ 3}  In an August 2016 adjudicatory hearing, both Father and Mother stipulated that the children were dependent.  Father and Mother subsequently entered into case plans for reunification with the children.  However, during the next two years neither parent made any significant progress completing case plans services.  Both repeatedly tested positive for drugs and both were periodically incarcerated.  The children remained in foster placements throughout this time.

{¶ 4}  In December 2017, the agency moved to terminate Father's visits with the children.  The agency alleged that Father was displaying erratic behavior during visits and had admitted to experiencing drug withdrawal symptoms during a visit.  Father had also been discharged from an intensive outpatient drug treatment program for nonattendance. He failed to submit to requested drug screens.  Of the drug screens submitted to, he tested positive for amphetamines, methamphetamine, cocaine, opiates, and fentanyl.  The court granted the motion ex parte and ordered that Father could not resume visits with the

children until he passed three random drug screens.

{¶ 5} In December 2017, the agency moved to grant temporary custody of the children to their grandparents, who lived out of state, and who had been approved to receive the children through an interstate compact home study. The court granted temporary custody to the grandparents in an ex parte order. Subsequently, on January 2, 2018, the court held a hearing on the agency's motion, at which Father was present. Father did not object to the placement of the children with their grandparents but objected to the earlier imposed restriction on his visitation. Father requested that he be permitted visitation with the children via telephone or video without the requirement that he pass three drug screens. The court denied Father's request, continued temporary custody with the grandparents and scheduled a review hearing for February 1, 2018.

{¶ 6} On February 1, 2018, the court held the previously scheduled review hearing. Despite notice, Father failed to attend the review hearing. At the conclusion of this review hearing, a further review hearing was scheduled for April 30, 2018. On April 30, 2018, the court held a further review hearing, which Father failed to attend. Mother and the grandparents were present. The agency sought to admit a recent social summary that described all the agency's efforts to reunify the children with Mother and Father and which recommended that the court grant legal custody to the grandparents. The agency asked the court to implement the recommendation contained in the social summary. Mother did not object.

{¶ 7} Father's attorney stated he had just discovered that Father was incarcerated and asked for a continuance of the hearing. Father's attorney noted that Father had not communicated with him since the January 2018 hearing. The agency objected to a continuance, arguing that Father had been contacted by an agency caseworker before the

hearing and had made no effort to be at the hearing or speak with his attorney, and that the children needed permanency. In denying the request for a continuance, the magistrate noted that Father had been incarcerated since April 17, 2018, and had not contacted either the court or his attorney and that Father had lost visits with his children months earlier and had made no effort to resume visits by passing drug screens. Additionally, the magistrate observed that the case was going to be two years old in three or four days.

{¶ 8} The magistrate thereafter issued a written decision that placed the children in the legal custody of the grandparents. Father later filed a timely objection, arguing that the court erred in not granting a continuance and in granting legal custody to the grandparents where no motion for legal custody had been filed. The juvenile court overruled the motion and adopted the magistrate's decision.

{¶ 9} Father appeals, raising one assignment of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED LEGAL CUSTODY OF APPELLANT'S CHILDREN TO OTHERS, THEREBY DENYING APPELLANT HIS RIGHT TO DUE PROCESS IN VIOLATION OF THE UNITED STATES AND THE OHIO CONSTITUTIONS.

{¶ 12} Father argues that the juvenile court erred in awarding the grandparents legal custody where they had not filed a motion for legal custody as required by statute and the Ohio Rules of Juvenile Procedure. Father further argues that the court's award of legal custody in the absence of a motion violated his procedural rights because he had no notice that the grandparents had sought legal custody and that the court might grant legal custody in his absence.

{¶ 13} As a preliminary matter, Father did not object to an award of legal custody to

the grandparents at the April hearing before the magistrate. Through counsel, Father requested a continuance of the hearing, but did not otherwise object to the dispositional order. Furthermore, Father did not argue before the magistrate that the grandparents were required to file a motion requesting legal custody, but instead did so for the first time in objections to the magistrate's decision. As such, this issue was waived. *Starner v. Merchants Holding L.L.C.,* 10th Dist. Franklin No. 17AP-621, 2018-Ohio-1165, ¶ 21; *Siegel Seaman v. Sloan,* 6th Dist. Lucas No. L-15-1150, 2016-Ohio-5432, ¶ 14; *In re Ohm,* 4th Dist. Hocking No. 05CA1, 2005-Ohio-3500, ¶¶ 38-47; *see also State ex rel. Durbin v. Indus. Comm.,* 10th Dist. Franklin No. 10AP-712, 2012-Ohio-664, ¶ 10. Because Father failed to properly raise this matter with the juvenile court, he is limited to a review for plain error.

{¶ 14} The plain error doctrine in civil cases applies only in the "extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Gable v. Gates Mills,* 103 Ohio St.3d 449, 2004-Ohio-5719, ¶ 43, quoting *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 122-123 (1997). The doctrine implicates errors that are "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.,* 70 Ohio St.2d 207, 209 (1982).

{¶ 15} Based on the standard of review, this court need not determine whether the juvenile court erred in granting legal custody in the absence of a written motion for legal custody filed by the grandparents pursuant to either R.C. 2151.353(A)(3) (an original dispositional order) or R.C. 2151.417(G)(3)(c) (a modified dispositional order from a review hearing). Even if this court were to assume that the juvenile court erred procedurally, such

error does not rise to the level necessary to establish civil plain error.

{¶ 16} Father was aware of yet failed to attend or make any effort to attend the hearing where the court granted legal custody. He failed to attend the prior hearing. He had not communicated with his attorney for nearly four months. The reason for his non-attendance was his incarceration for alleged drug-related offenses.

{¶ 17} The dependency complaints had been filed nearly two years prior to the grant of legal custody, throughout which time the children had remained in foster placement. During those two years, Father failed to complete various case plan services. Instead, he continued using and testing positive for drugs, which caused him to lose visitation rights. He could not meet the court's requirement of passing three random drug screens in order to regain visitation. When the grandparents initially received temporary custody, Father consented to this arrangement, and only asked that he be allowed to resume visitation without the requirement of passing three random drug screens.

{¶ 18} Based on the foregoing, even if it was error to grant legal custody in the absence of a written motion, this is not one of "those extremely rare cases" where this court would find that the error that occurred was so prejudicial as to rise to the level of civil plain error.

{¶ 19} Next, Father argues that he was denied his procedural due process rights because he did not have adequate notice of the hearing or that legal custody of his children could be awarded at the April hearing. The Due Process Clause of the Fourteenth Amendment to the United States Constitution states: "[n]o State shall * * * deprive any person of life, liberty, or property, without due process of law * * *." And the Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution provides: "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation,

shall have remedy by due course of law, and shall have justice administered without denial or delay."

**{¶ 20}** A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388 (1982); *In re Murray*, 52 Ohio St.3d 155, 157 (1990). In *Santosky*, the United States Supreme Court recognized that a natural parent retains his or her fundamental liberty interest throughout permanent custody proceedings and must be provided with fundamentally fair procedures throughout such proceedings.[1] *Id.* at 753-754.

**{¶ 21}** The Ohio Supreme Court has held when the state seeks to interfere with a parent's liberty interest in the care, custody, and management of his or her child, the state "must attempt to provide actual notice" to the parents. *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 14, citing *Dusenbery v. United States*, 534 U.S. 161, 170, 122 S.Ct. 694 (2002). Due process does not, however, require "'heroic efforts'" to effectuate service or that a parent receives actual notice. *Id.* quoting *Dusenbery* at 170. Instead, the means employed must be reasonably calculated to inform the parent of the proceeding involving his or her child. *Id.* citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S. Ct. 652 (1950).

**{¶ 22}** After reviewing the record, this court finds that Father was provided with notice that was constitutionally adequate and did not deprive him of a fundamental liberty interest.

---

1. *Santosky* and *Murray* involved permanent custody proceedings. However, an award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17. The 9th District Court of Appeals has held that because legal custody is intended to be permanent in nature, such proceedings are sufficiently analogous to permanent custody proceedings and a parent should be afforded the same due process rights in either proceeding. *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 23; *In re A.A.*, 9th Dist. Summit No. 25253, 2010-Ohio-5735, ¶ 7. That issue was not raised by the parties and is not addressed in this appeal. However, for purposes of deciding this case, we will presume that the procedural rights law relevant to permanent custody cases is applicable.

Father attended the January 2018 hearing and was informed by the court that it was "absolutely imperative" at this late stage of the case that he begin to address the issues that had prevented reunification. The court informed him that there was a further reviewing hearing scheduled for February 1, 2018, and that he should use the intervening time to obtain a new drug and alcohol assessment, follow through with its recommendations, and hopefully he might be able to resume visitation by the next hearing. Father then failed to attend the February review hearing. Had he done so or had he contacted his attorney, he would have been notified that a further review hearing had been scheduled for April 2018.

{¶ 23} The procedures used were sufficient to provide notice to Father of the April hearing and comports with constitutional due process. However, Father also had actual notice of the April hearing. He had personal contact with an agency caseworker three days prior to the hearing, during which meeting the caseworker informed Father of the hearing. He thereafter made no efforts to attend, to contact his attorney, or to contact the court. With respect to whether Father had notice that legal custody could be granted at the hearing, the initial complaints filed in the matter specifically stated that the agency was asking the court to "[g]rant a disposition of * * * legal custody to another party deemed to be appropriate by the court * * *." The affidavit filed in support of the change of temporary custody from the agency to the grandparents stated that the grandparents "have expressed they would like to pursue temporary custody and *placement*" of the children. Thus, the grandparents' affidavit would have informed Father that they were seeking a permanent placement. Finally, Father was repeatedly warned through various magistrate's orders or decisions the following:

> THE PARTIES JOINED IN THIS MATTER SHALL APPEAR BEFORE THE COURT AT THE TIME AND DATE AS SET FORTH IN THIS ORDER. FAILURE TO APPEAR MAY RESULT IN JUDGMENT BEING RENDERED IN YOUR

ABSENCE, FINAL OR TEMPORARY DISPOSITIONAL ORDERS MAY BE ENTERED IN THIS CASE WITH NO FURTHER NOTICE TO YOU, AND/OR THE ISSUANCE OF A WARRANT FOR YOUR ARREST.

{¶ 24} The foregoing establishes sufficient notice to inform Father that a dispositional order could be issued in his absence that would impact his parental rights. Moreover, Father's attorney was present at the hearing to represent his interests. For the foregoing reasons, this court overrules Father's sole assignment of error.

{¶ 25} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.