[Cite as *In re J.L.*, 2025-Ohio-1142.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN RE:

    J.L.,

ADJUDICATED DEPENDENT CHILD.

[TRALISA L. - APPELLANT]

**CASE NO. 1-24-23**

**O P I N I O N**

---

IN RE:

    Jax.M.,

ADJUDICATED DEPENDENT CHILD.

[TRALISA L. - APPELLANT]

**CASE NO. 1-24-24**

**O P I N I O N**

---

IN RE:

    N.L.,

ADJUDICATED DEPENDENT CHILD.

[TRALISA L. - APPELLANT]

**CASE NO. 1-24-25**

**O P I N I O N**

---

IN RE:

    Jas.M.,

ADJUDICATED DEPENDENT CHILD.

[TRALISA L. - APPELLANT]

**CASE NO. 1-24-26**

**O P I N I O N**

Case Nos. 1-24-23, 24, 25, 26, 27

---

**IN RE:**

    **S.L.,**

**ADJUDICATED DEPENDENT CHILD.**

**[TRALISA L. - APPELLANT]**

                            **CASE NO. 1-24-27**

                            **O P I N I O N**

---

**Appeals from Allen County Common Pleas Court
Juvenile Division
Trial Court Nos. 2022JG38320, 2022JG38321, 2022JG38322,
2022JG38323 and 2022JG37819**

**Judgments Affirmed**

**Date of Decision:  March 31, 2025**

---

**APPEARANCES:**

    *Howard A. Elliott* **for Appellant**

    *Ashley R. Stansbery* **for Appellee**

**ZIMMERMAN, J.**

**{¶1}** Mother-appellant, Tralisa L. ("Tralisa"), appeals the on March 4, 2024 decisions of the Allen County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, Jas.M. and Jax.M., to appellee, Allen County Job and Family Services (the "agency"), and placing her minor children

-2-

S.L., J.L., and N.L. into the legal custody of a kinship provider or a relative. For the reasons that follow, we affirm.

{¶2} The minor children involved in these proceedings are Jas.M. (born in 2014) and Jax.M. (born in 2015), children of Tralisa and Jason M. ("Jason"), and S.L. (born in 2018), J.L. (born in 2020), and N.L. (born in 2022), children of Tralisa and Jack L. ("Jack").[1] The underlying actions commenced in the trial court in October 2020 when the agency filed complaints in other cases involving Jas.M., Jax.M., S.L., and J.L. However, the initial cases involving Jas.M., Jax.M., S.L., and J.L. were dismissed without prejudice due to the inability to adjudicate them within the statutory time limits.

{¶3} Subsequently, on October 13, 2022, the agency filed new complaints alleging abuse and dependency as to Jas.M., Jax.M., and S.L., and alleging dependency as to J.L., based on new allegations. On that same date, the trial court's magistrate found probable cause to believe Jas.M., Jax.M., and S.L. were dependent and abused children, and that J.L. was a dependent child. Thereafter, the trial court's magistrate granted the agency temporary custody of Jas.M. and Jax.M. and placed S.L. and J.L. in the temporary custody of kinship providers, Matthew S. ("Matthew") and Jessica S. ("Jessica").

---

[1] Despite being properly served with notice, Jason did not participate in the trial court proceedings (due to his incarceration) until the permanent custody hearing.

{¶4} During the pendency of the original cases, and following the birth of N.L., the agency filed a complaint on January 11, 2022 alleging N.L. to be a dependent child. After a probable cause hearing that same day, the trial court's magistrate determined that there was probable cause to believe that N.L. was a dependent child and placed N.L. in the temporary custody of a relative, Angela S. ("Angela"). Following an adjudicatory hearing on March 16, 2022, the trial court adjudicated N.L. as a dependent child. After the dispositional hearing, the trial court determined that it was in N.L.'s best interest to remain in the temporary custody of Angela. The agency filed a motion to extend the temporary custody order on December 9, 2022, which the trial court granted.

{¶5} Following adjudicatory hearings on November 15, December 7 and 22, 2022, the trial court adjudicated Jas.M., Jax.M., S.L., and J.L. as dependent children. After the dispositional hearing on January 6, 2023, the trial court determined that it was in the best interest of Jas.M. and Jax.M. to remain in the temporary custody of the agency and that it was in the best interest of S.L. and J.L. to remain in the temporary custody of Matthew and Jessica.

{¶6} On January 13, 2022, the trial court appointed a guardian ad litem ("GAL") to represent N.L. On October 14, 2022, the trial court appointed a GAL to represent Jas.M., Jax.M., S.L., and J.L. However, after the GAL filed a notice of potential conflict, the trial court appointed separate counsel for Jas.M. and Jax.M.

-4-

The GAL filed multiple reports during the pendency of the cases, ultimately recommending that permanent custody of Jas.M. Jax.M. be granted to the agency, that legal custody of S.L. and J.L. be granted to Matthew and Jessica, and that legal custody of N.L. be granted to Angela. Throughout the pendency of the cases, the agency filed case plans and semi-annual reviews with the trial court.

{¶7} On June 6, 2023, the agency filed motions in the trial court requesting that it conduct a hearing to determine whether it needed to expend reasonable efforts toward reunification under R.C. 2151.419(A)(2)(e) since Tralisa had her parental rights involuntarily terminated with respect to another child. That same day, the agency filed motions in the trial court seeking permanent custody of Jas.M. and Jax.M. and motions requesting that the trial court grant legal custody of S.L., J.L. to Matthew and Jessica and legal custody of N.L. to Angela.

{¶8} After a hearing on September 15, 2023, the trial court determined that the agency was not required to engage in reasonable efforts to reunify the children with Tralisa under R.C. 2151.419(A)(2)(e). Importantly, even though the trial court relieved the agency of its legal obligation to make reasonable reunification efforts, the trial court nonetheless made the requisite reasonable efforts findings throughout the pendency of the cases and adopted the agency's case plans.

{¶9} Following a hearing on February 5-6, 2024, the trial court on March 4, 2024 granted permanent custody of Jas.M. and Jax.M. to the agency and granted

legal custody of S.L., J.L. to Matthew and Jessica and legal custody of N.L. to Angela. Prior to granting legal custody of S.L. and J.L. to Matthew and Jessica and legal custody of N.L. to Angela., Matthew, Jessica, and Angela executed statements of understanding.

{¶10} On March 28, 2024, Tralisa filed her notices of appeal and this court consolidated the cases for purposes of appeal.[2] Tralisa raises two assignments of error for our review.

## First Assignment of Error

**The agency failed to put forth reasonable efforts for reunification of the parents with the children despite compliance of the parents with the case plan. The agency's plan seemed to exclude them and seek permanent custody of the children all of which was error.**

{¶11} In her first assignment of error, Tralisa argues that the trial court erred by granting permanent custody of Jas.M. and Jax.M. to the agency because the agency failed to make reasonable efforts toward reunification.

### *Standard of Review*

{¶12} "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 2015-Ohio-2740, ¶ 24 (3d Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

---

[2] Neither Jason nor Jack filed a notice of appeal.

*Analysis*

**{¶13}** "'Reasonable efforts' has been defined as the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the threat is removed." *In re I.H.*, 2020-Ohio-4853, ¶ 23 (6th Dist.), citing *In re C.F.*, 2007-Ohio-1104, ¶ 28.  However, "[n]o one section of the Revised Code addresses the concept of reasonable efforts." *In re C.F.* at ¶ 29.  "Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *Id.*, quoting R.C. 2151.01(A).  "To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit." *Id.*

**{¶14}** In particular, under R.C. 2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency . . . has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1).  The Supreme Court of Ohio

> determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis in original.)  *In re N.R.S.*, 2018-Ohio-125, ¶ 25 (3d Dist.), citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

> According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

*In re B.S.*, 2015-Ohio-4805, ¶ 36 (3d Dist.), quoting *In re C.F.* at ¶ 41.

{¶15} However, "[u]nder certain circumstances, the law dispenses with the duty to make reasonable efforts to reunify the family."  *In re C.F.* at ¶ 34. Relevantly, R.C. 2151.419(A)(2)(e) excuses the reasonable efforts determination in situations when the parent has had parental rights involuntarily terminated with respect to a sibling of the child.  *In re Pittman*, 2002-Ohio-2208, ¶ 13 (9th Dist.). Even so, the statute includes "a provision that provide[s] the trial court with the discretion to override the mandatory exceptions listed in (A)(2)."  *In re Robinson*, 2008-Ohio-5311, ¶ 47 (3d Dist.).

{¶16} The trial court did not abuse its discretion with regard to its reasonable efforts finding.  Decisively, the trial court granted the agency's motions to bypass the reasonable efforts requirement since Tralisa had her parental rights involuntarily

terminated as provided for in R.C. 2151.419(A)(2)(e). *Accord id.* at ¶ 50. Consequently, the agency was not required to demonstrate that it made reasonable efforts to reunify the family prior to the trial court granting it permanent custody of Jas.M. and Jax.M. *Accord In re R.B.*, 2010-Ohio-4710, ¶ 23 (6th Dist.) ("In the instant case, subsection (e) applies as appellant had already had her parental rights involuntarily terminated with respect to her three older children. This eliminated the need for LCCS to make any reasonable efforts to prevent the removal of R.B."). Moreover, notwithstanding the applicability of the bypass provision, the evidence in the records before this court reveals that Tralisa failed to meaningfully participate in and derive benefit from the services provided by the agency. *See In re Robinson* at ¶ 49, 50. Thus, the trial court's reasonable efforts determination is not unreasonable, arbitrary, or unconscionable.

{¶17} Tralisa's first assignment of error is overruled.

### Second Assignment of Error

**In as much as a statement of legal understanding concerning custody is a requirement prerequisite for an order of custody concerning the minor children, the agency's failure to confirm a comprehension and understanding of same and acknowledging their obligations under the statement of understanding renders the kinship and relative placement improper and must be set aside and remanded to the trial court.**

{¶18} In her second assignment of error, Tralisa argues that the trial court erred by granting legal custody of S.L. and J.L. to Matthew and Jessica and by

granting legal custody of N.L. to Angela without having proper statements of understanding.

*Standard of Review*

**{¶19}** On appeal, we review a trial court's decision to grant or deny a motion for legal custody under an abuse-of-discretion standard. *In re A.D.*, 2023-Ohio-2442, ¶ 58 (3d Dist.). As we previously stated, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶20}** However, because Tralisa did not make any specific objections regarding the statements of understanding at the trial court level, she waived all but plain error on appeal. *See In re L.W.*, 2022-Ohio-3696, ¶ 50 (3d Dist.). "A finding of plain error is strictly limited, extremely rare, and occurs only in exceptional circumstances." *In re M.G.*, 2023-Ohio-1316, ¶ 34 (12th Dist.). *See also In re K.R.*, 2016-Ohio-2775, ¶ 20 (12th Dist.) (acknowledging that "[t]he plain error doctrine is not favored in civil cases"). "This is because the plain error doctrine implicates only those errors 'that are "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse [e]ffect on the character and public confidence in judicial proceedings."'" *In re M.G.* at ¶ 34, quoting *In re J.M.*, 2019-Ohio-3716, ¶ 14 (12th Dist.), quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982). *See also In re A.V.O.*, 2012-Ohio-4092,

¶ 9 (9th Dist.) ("To establish plain error, Mother must demonstrate that the trial court's failure to require the proposed legal custodian to submit a written statement of understanding affected 'the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'"), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

*Analysis*

**{¶21}** "Ohio's juvenile courts are statutory entities, and they are able to exercise only those powers that the General Assembly confers on them." *In re A.D.* at ¶ 59. "R.C. Chapter 2151 grants a juvenile court exclusive original jurisdiction concerning a child alleged to be abused, neglected, or dependent." *Id.* "Following an adjudication of an abused, neglected, or dependent child, R.C. 2151.353(A) provides the juvenile court with certain dispositional alternatives for the child." *Id.* at ¶ 60. "Among the juvenile court's dispositional alternatives is granting legal custody of the child to a person identified in the complaint or in a motion filed prior to the dispositional hearing." *Id.* at ¶ 61.

**{¶22}** As relevant here, R.C. 2151.353(A)(3) authorizes the court, when adjudicating a child as abused, neglected, or dependent, to award legal custody of the child to either parent or any other person who has properly requested legal custody. Specifically, this provision requires that any person identified as a

-11-

proposed legal custodian in a complaint or motion filed prior to the dispositional hearing must sign a statement of understanding acknowledging (at a minimum):

(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the department of education and workforce, whichever occurs first.

(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

R.C. 2151.353(A)(3).

**{¶23}** On appeal, Tralisa does not contest the execution of the requisite statements of understanding by Matthew, Jessica, and Angela. Instead, she asserts that the trial court's inquiry into their comprehension of these statements was inadequate, essentially limited to a single question regarding their understanding.

**{¶24}** Tralisa's contention that the trial court's inquiry into Matthew's, Jessica's, and Angela's understanding was inadequate is without merit. Instead, our review of the record demonstrates that the trial court did not err, let alone commit plain error, by granting legal custody of S.L. and J.L. to Matthew and Jessica or by granting legal custody of N.L. to Angela. *Accord In re L.W.*, 2022-Ohio-3696, at ¶ 54. Notably, Matthew, Jessica, and Angela appeared at the legal custody hearing (as required by R.C. 2151.353(A)(3)(d)) and were available for questioning by the court and all parties to the proceedings. Importantly, Matthew, Jessica, and Angela testified that they fully understood the commitment that they were making to the children as legal custodians. Furthermore, at the hearing, Matthew, Jessica, and Angela each testified that they would respect Tralisa's residual parental rights. *See In re E.Z.-S.*, 2019-Ohio-1177, ¶ 27 (6th Dist.); *In re L.W.* at ¶ 53. Consequently, there is no error, let alone plain error, with respect to the statements of understanding in these cases.

**{¶25}** Tralisa's second assignment of error is overruled.

{¶26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**MILLER and EPLEY, J.J., concur.**

**/hls**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**