[Cite as *In re A.D.*, 2017-Ohio-6913.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

In re A.D., M.D., D.D.

Court of Appeals Nos. E-16-059
E-16-060
E-16-061

Trial Court Nos. 2011-JN-0019
2011-JN-0020
2011-JN-0021

**DECISION AND JUDGMENT**

Decided: July 21, 2017

\* \* \* \* \*

Elizabeth F. Wilber, for appellant.

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Susan Ryan Brown, Assistant Prosecuting Attorney, for appellee.

\* \* \* \* \*

**PIETRYKOWSKI, J.**

{¶ 1} In this consolidated appeal, appellant-mother, D.K., appeals the April 20,

2016 judgments of the Erie County Court of Common Pleas, Juvenile Division, which,

granting the motion of appellee Erie County Department of Job and Family Services,

awarded legal custody of A.D., M.D., and D.D. to non-family foster parents. A.D. and M.D. were to be placed in one home and D.D. in a separate home with visitation granted to appellant and father, T.D. For the reasons set forth herein, we affirm.

{¶ 2} This case commenced in October 2011, when appellee, Erie County Department of Job and Family Services (ECDJFS), filed separate complaints alleging that each of the three children were neglected and dependent children. The complaints alleged an incident of domestic violence between mother and father and that one of the children, then two years old, was found wandering outside unsupervised. The children were adjudicated dependent and placed in protective supervision with father restrained from coming onto the premises. On March 22, 2012, emergency temporary custody was awarded to the agency and the children were placed in foster care.

{¶ 3} The case plans required that appellant complete a mental health assessment and complete any recommendations, complete parenting classes, meet with a domestic violence advocate at Safe Harbor, and obtain employment. The case plan was later modified to add a batterer's intervention assessment and a drug and alcohol assessment after mother was charged with domestic violence and assault. Subsequent amendments to the case plan were due to the birth of two additional children[1].

{¶ 4} A show cause motion was filed by the agency on July 13, 2012. Appellant admitted the allegations that she failed to initiate and/or complete the majority of the case

---

[1] C.D. was born in October 2012, and in a separate case ECDJFS was awarded temporary custody. De.D. was born in April 2014.

2.

plan requirements.  The court found appellant guilty but provided that the contempt finding could be purged by compliance with the case plan.

{¶ 5} In July 2013, ECDJFS filed motions in the case to add the foster parents as parties to the actions.  The motions requested that legal custody of A.D. and M.D. be awarded to L.H. and J.H., and that legal custody of D.D. be awarded to L.N.  The motions stated that the parents were not engaged in their case plan goals and that legal custody to the foster parents would be in the children's best interests.

{¶ 6} On September 18, 2013, ECDJFS filed motions for permanent custody as to the three children stating that the children had been out of their parents' custody for 12 or more months out of a 22-month consecutive period and that the children could not be placed with either parent within a reasonable time.  The motions further stated that the parents had failed to remedy the conditions which facilitated the children's removal from their custody.

{¶ 7} A trial on the motions took place over August 18 and 19, and September 19 and 26, 2014.  Prior to the start of testimony, ECDJFS withdrew its motions for permanent custody and the matter proceeded solely on its motions for legal custody.

{¶ 8} Eight witnesses, including agency personnel, a mental health provider, foster-parents, and the parents testified during the hearing.  A summary of their testimony is as follows.  The family's ECDJFS caseworker testified that she had been assigned to the family in December 2011.  The case went from protective custody to the agency being awarded temporary custody in March 2012, due to appellant's grandmother's

3.

inability to watch the children and appellant's inability to remain in grandmother's apartment. The caseworker testified that the grandmother stated that appellant would leave the children for days at a time and that she did not know where she was. There were also issues regarding appellant's ability to transport herself and the children to day care and various appointments and there were no other family members willing and/or able to be approved by the agency.

{¶ 9} The caseworker indicated that appellant did complete the majority of the case plan requirements and in mid-2013, eventually became employed. In December 2013, she obtained housing. The caseworker testified that appellant lived in a two-bedroom apartment which, if appellant had custody of all five children, the agency would have difficulty approving as appropriate housing.

{¶ 10} The caseworker stated that once appellant had all five children in her home for extended periods of time, she had difficulty getting them to day care and attending her counseling meetings. The caseworker admitted that they were unable to provide appellant with transportation but had provided her with public transit passes. The caseworker explained that they did provide her with day care which was very unusual in cases where the agency had custody of the children.

{¶ 11} The caseworker stated that she believed that legal custody of the three older children should be awarded to the respective foster parents because the case plan had still not been completed, the parents had not been regular for scheduled visitations, the

4.

children had formed bonds with the foster parents, and the foster parents facilitated relationships between the children.

{¶ 12} Agency employee, L.F., testified that she conducted supervised visits of appellant and her children at appellant's apartment. The summaries of her visits were admitted into evidence. L.F. testified that on three occasions she arrived at appellant's apartment for a scheduled visit and that no one was home. L.F. testified that once appellant had all five children in the home during visitation, she seemed overwhelmed and frustrated.

{¶ 13} Mental health counselor, J.D., testified that she assessed appellant in June 2013 (her second assessment with the service). It was recommended that she attend individual mental health counseling. J.D. stated that appellant's attendance was inconsistent and little progress had been made. J.D. clarified that appellant's attendance became inconsistent after February 2014, when she was employed and had all of the children in her apartment.

{¶ 14} The guardian ad litem ("GAL") submitted her report in which she recommended that (though not an option at the time she authored her report) legal custody be awarded to the foster parents. The report explained that after doing little the first year of the case plan, appellant and father began engaging in plan services. The report noted that just when progress was being made, issues would "crop up and cause the case to stall." The GAL stated that appellant had two additional children and that she

5.

was unable to care for them all. Further, extended home visits were terminated due to an incident of corporal punishment.

{¶ 15} The Court Appointed Special Advocate ("CASA") testified that she was appointed to the case in February 2013. The CASA testified that her contact with the family occurred approximately four to five times when she stopped by appellant's apartment. The CASA stated that she did not observe any real concerns during her visits.

{¶ 16} The CASA also observed the children with their foster parents. She testified that her report recommended that legal custody be granted to the foster parents. The CASA stated that the young age of the parents was her main concern as well as their financial situation. The CASA stated that she did not believe that appellant had adequate parenting skills or a support system. Though she did not feel the children were in any danger in appellant's care, she felt that appellant was often overwhelmed. The CASA expressed the need for the children to have permanency.

{¶ 17} Foster parent, L.N., testified that she began fostering D.D. in March 2012. In January 2013, she got the boys, A.D. and M.D. Finally, C.D. was placed in her home in March 2014. L.N. testified that appellant and father were not consistent with visitation and were placed on a "call-in" status—meaning that L.N. would not bring the children unless they called and indicated they would be present.

{¶ 18} L.N. testified that she desires legal custody of D.D. and that she would abide by any visitation order that the court would impose. L.N. reiterated this even after acknowledging that she eventually plans to move to South Carolina.

{¶ 19} Foster parent J.H. testified that she and her husband fostered A.D. and M.D. from April 2012, until January 2013, in their home in Toledo, Ohio. J.H. stated that they had the boys removed from the home because the parents began requesting visitation which was supervised in Sandusky, Ohio. J.H. stated that the boys were driven to visits, sometimes four per week, by a transport service that charged $68 per day. J.H. stated that this sum was deducted from their per diem stipend for having the boys and that they essentially ended up owing money to foster. J.H. further explained that the transporter would frequently get to Sandusky, the parents would not show up for the visit, and they would return the children early which would cause one of the couple to take additional time off of work. J.H. stated that she and foster parent L.N. had a good relationship and that they would facilitate visits with the children.

{¶ 20} Father, T.D., testified that he has been employed full-time for two years at a parts assembly plant. Father works about 60 hours per week, and he generally works third shift (10:00 p.m. to 6:00 a.m.). Child support payments of about $150 per week are deducted directly from his paycheck.

{¶ 21} Regarding the 2011 domestic violence incident, father testified that it was a "miscommunication" and that there was no hitting or kicking. Father testified that he had attended 20 of 26 batterer's intervention sessions. Initially he could not afford the $50 sessions and then, once employed, had multiple work conflicts. Father also admitted that his driver's license was currently suspended.

7.

**{¶ 22}** Father stated that initially he would like L.N. to get legal custody of the girls, D.D and C.D., and that the three boys would go to mother. Father stated that if the agency were not involved he and mother would live together in a larger apartment and care for all the children. Father testified that he loves and misses his children.

**{¶ 23}** Appellant testified that at the time of the domestic violence incident in 2011, she had three children and had to move with the children to her grandmother's two-bedroom apartment which also housed six other people. When appellant was asked to leave the apartment the children were placed in temporary agency custody.

**{¶ 24}** Appellant testified that she is waitressing at a restaurant approximately 20 to 30 hours per week and often requests additional hours. Appellant stated that she has housing for which she pays full rent. She testified that she is working on getting her high school diploma and driver's license.

**{¶ 25}** Appellant admitted that she really did not participate in the case plan for the first year or more. As to counseling, appellant admitted that she had not met her requirements under the case plan but stated that she had issues with transportation. Appellant stated that once she had the children, in order to get to counseling she would have to leave two hours early to get the children to daycare and then get to the appointment due to the bus schedule. She would also have to contend with her work schedule. Appellant also admitted that she left the children with her sister who was not approved by the agency; the sister hit one of the children causing his nose to bleed.

8.

{¶ 26} As to visitation, appellant stated that during the time of the trial, she had six opportunities to visit the children and she missed half. She stated that she either forgot about the visit or she had to work. Appellant also stated that she lost her calendar.

{¶ 27} On February 19, 2015, in a detailed 29-page decision containing findings of fact and conclusions of law, the magistrate granted the ECDJFS' motion to award legal custody to L.H. and J.H. and L.N. In so finding, the magistrate reviewed the best interest factors under R.C. 3109.04(F)(1). The magistrate then concluded that although appellant loves her children and does the best she can, it was not good enough. He stated that the children need a stable environment to reach their full potential. The magistrate further ordered bi-weekly visitation with appellant and father.

{¶ 28} Appellant filed objections to the magistrate's decision; on April 20, 2016, the trial court rejected the objections and, after independent review, adopted the magistrate's decision. This appeal followed.

{¶ 29} Appellant raises the following assignment of error for our review:

> The court erred as a matter of fact and law and abused its discretion when it found terminating the parental rights of the mother and not reunifying with appellant to be in child's best interest because such was not the only means of obtaining a legally secure placement for the children,

such was not supported by clear and convincing evidence and/or because permanent custody was not in the child's best interest.[2]

{¶ 30} In her sole assignment of error, appellant essentially argues that she should not be "punished for being young and poor." Appellant asserts that the issues that caused removal of the children in 2011, have not been repeated, the parents did not abandon the children, and they are not incapable of supporting them. Appellant further contends that there would be significant barriers to visitation with legal custody being awarded to the foster parents. L.H. and J.H. live in Toledo and L.N. lives in Vermillion, Ohio. Further, L.N. testified that she was planning on moving to South Carolina. Conversely, ECDJFS simply argues that the trial court's orders were squarely within the trial court's discretion in its proper application of the law.

{¶ 31} Where a child has been adjudicated dependent, a trial court may award legal custody to a nonparent where it finds, by a preponderance of the evidence, that legal custody is in the child's best interests. *In re B.L., L.L.*, 6th Dist. Lucas No. L-15-1030, 2016-Ohio-738, ¶ 7. We review the trial court's decision awarding legal custody under an abuse of discretion standard. *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶ 19. An abuse of discretion connotes that a trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

---

[2] Although the trial court did not award legal custody of her children to appellant, the court did not "terminate" appellant's parental rights.

10.

**{¶ 32}** In making such a determination "courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the [child]." *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25; *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 15.

**{¶ 33}** Here, in determining what is in the best interests of the children, the trial court reviewed all the evidence and considered the factors in R.C. 3109.04(F)(1). Reviewing the court's findings and the record in this matter, we cannot say that the court abused its discretion when it found that it was in the children's best interests to be placed in legal custody of nonparent caregivers. Appellant failed to engage in the case plan for over a year following its inception, was inconsistent with visitation, and had significant difficulty caring for all the children in her home. Accordingly, we find that appellant's assignment of error is not well-taken.

**{¶ 34}** On consideration whereof, we find that the judgments of the Erie County Court of Common Pleas, Juvenile Division, are affirmed. Pursuant to App.R. 24, costs are assessed to appellant.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE