[Cite as *In re J.H.*, 2018-Ohio-2594.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.H.

Court of Appeals Nos. L-17-1317
L-17-1318

Trial Court No. AB 17264017

**DECISION AND JUDGMENT**

Decided: June 29, 2018

* * * * *

Laurel A. Kendall, for appellants.

Jeremy G. Young, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellants, V.B. and T.H., maternal grandmother and minor mother, respectively, of J.H., appeal the December 12, 2017 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which awarded legal custody of J.H. to maternal

great-aunt, H.H. Because we agree that the court's award was in J.H.'s best interests, we affirm.

{¶ 2} On August 7, 2017, appellee Lucas County Children Services ("LCCS") filed a complaint in dependency and request for shelter care hearing. The complaint alleged that mother T.H., a minor, had recently given birth to J.H. J.H.'s maternal grandmother, V.B., had a long history with LCCS which included the October 2016 termination of her parental rights of five of the youngest of her nine children.[1] V.B.'s parental rights were terminated due to concerns about the safety of the children in her home which included her husband. The youngest child, an infant, had suffered from multiple fractures and non-organic failure to thrive. The perpetrator of the abuse was not identified.

{¶ 3} The complaint further indicated that V.B. had regained custody of three of the older children, including appellant-mother, T.H.; LCCS had retained protective supervision. There were also allegations that V.B. and T.H. concealed T.H.'s pregnancy from LCCS. On August 7, 2017, interim temporary custody was awarded to LCCS and the child was placed with H.H., his maternal great-aunt.

{¶ 4} On October 26, 2017, LCCS filed a motion to change its dispositional request to award legal custody to H.H. LCCS claimed that T.H. was in the legal custody of her mother, V.B., and due to V.B.'s "extensive history" with the agency, it would not

---

[1] This court affirmed the decision in *In re S.S.*, 6th Dist. Lucas Nos. L-16-1234, L-16-1243, 2017-Ohio-4474.

2.

be safe for J.H, to live in the home. The motion indicated that H.H. had allowed T.H. to live in her home and care for her son; H.H. reported that mother was doing a good job.

{¶ 5} The dispositional and adjudicatory hearings in the case were held on October 27, 2017. Prior to the hearing on J.H., the court addressed LCCS' motion to terminate its protective supervision of T.H. and her sibling R.S., and to change disposition of sibling S.S. to temporary custody to LCCS.

{¶ 6} As to sibling S.S., the court awarded temporary custody to LCCS due to domestic violence issues between S.S. and mother, V.B. Protective supervision of T.H. and R.S. was terminated; R.S. was living in mother's home and doing well, T.H. was attending online school, counseling sessions, and caring for her baby at her aunt's home.

{¶ 7} As to J.H., the adjudication phase of the hearing then proceeded with LLCS caseworker Mario Q. testifying as the child's caseworker. Mario Q. stated that he had been involved with the family since at least 2001. V.B. is the mother of T.H. and T.H's father's whereabouts were unknown. J.H.'s putative father had not established paternity and was never directly contacted.

{¶ 8} Mario Q. testified that LCCS became involved with J.H. following his August 2017 birth because T.H., a minor, was in the custody of V.B. Mario Q. stated that LCCS had concerns about the safety of V.B.'s home "due to the extensive history of child abuse and neglect" involving V.B. and her husband. Specifically, the youngest child, an infant, suffered multiple fractures and was diagnosed with organic failure to

thrive. Mario Q. stated that permanent custody of five of V.B.'s children was awarded to LCCS.

{¶ 9} Mario Q. further testified that on multiple occasions V.B. would not allow him in her home to confirm whether T.H. had given birth. Mario Q. explained that during this period LCCS still had protective supervision of T.H. and he should have been given access to her. Mario Q. stated that T.H. had been pregnant for over six months before LCCS became aware of it. He expressed that LCCS was concerned about a baby living in V.B.'s home due to the incidents with her own children. Following the testimony, J.H. was adjudicated a dependent child and the matter proceeded to disposition.

{¶ 10} J.H.'s guardian ad litem ("GAL") testified that he is doing very well at his great-aunt's home and that T.H. is taking wonderful care of him there. The GAL explained that T.H. has also been living at H.H.'s home and has been caring for the child and attending online school regularly. The GAL stated that H.H.'s home is clean and well-supplied for an infant's needs.

{¶ 11} The GAL agreed that it was in J.H.'s best interests to remain in T.H.'s care. However, the GAL further stated that she would not recommend that J.H. be placed in V.B.'s home due to safety concerns. The GAL recommended that legal custody be awarded to H.H. and that it was in the child's best interests that T.H. remain in her aunt's home. The GAL indicated that T.H. did not need to be supervised with J.H. but that V.B.

4.

should have no unsupervised contact with the child. Specifically, the GAL recommended that V.B. be supervised by H.H. or another appropriate person.

{¶ 12} During cross-examination, the GAL acknowledged that T.H. wants legal custody of her son. The GAL stated that she is not making that recommendation because T.H. is a minor and in her mother's custody. The GAL explained that she was not sure if T.H. could protect J.H. in her mother's home and that it was too big of a risk based upon V.B.'s history with LCCS.

{¶ 13} The family caseworker, Mario Q., testified that LCCS is recommending that H.H. have legal custody of J.H. Mario Q. stated that he believes this is in J.H.'s best interests because H.H. has been very appropriate and has cared for T.H. while she cared for J.H. They have been doing very well with aunt. Mario Q. explained that T.H. should not have legal custody of J.H. because she is a minor and is not financially able to independently care for him.

{¶ 14} Mario Q. mirrored the GAL's testimony recommending that V.B. be supervised if having contact with J.H. He agreed that T.H. could not supervise any visits and noted that T.H. tends to do what her mother tells her.

{¶ 15} T.H. testified that she has been living with H.H. since the birth of her son. When she goes to V.B.'s house the baby is not with her. T.H. testified that she wants legal custody of J.H. She stated that if she was in V.B.'s home she would be responsible for J.H.'s care and would also keep LCCS apprised of his status. T.H. admitted that if H.H. was awarded legal custody, V.B. would allow her to continue living with her aunt.

5.

T.H. further testified that she would abide by the court order not allowing her to take J.H. to V.B.'s house.

{¶ 16} The court then concluded that it was in J.H.'s best interests to award legal custody of him to H.H., his maternal great-aunt. The court ordered that A.B., V.B.'s husband have no contact with J.H., and that V.B. have no unsupervised contact with J.H. The court specified that T.H. could not supervise her mother, and that H.H. or someone she determines to be suitable, could supervise visits. The magistrate's findings of fact were issued on November 21, 2017.

{¶ 17} V.B. filed a motion to set aside the magistrate's decision (properly categorized as objections to the magistrate's decision) and the matter came on for a hearing on December 8, 2017. The court questioned T.H. regarding her living arrangements and the care she provides to J.H. T.H. stated that she felt that because she was providing all the care for J.H., she should have legal custody of him. She also indicated that she receives public assistance for food and that V.B. pays for J.H.'s diapers. The court also questioned the respective attorneys.

{¶ 18} V.B. explained that she filed the motion because T.H.'s attorney did not represent T.H.'s wishes at the prior hearing; she stated that T.H. did not agree to her aunt having legal custody of J.H. The court then explained that the issue was that V.B. had legal custody of T.H. and that if T.H. was awarded legal custody of J.H. then the baby would potentially reside with V.B. The court stated that based on V.B.'s prior history,

6.

the scenario "was not going to happen." On December 12, 2017, the objections were denied. This appeal followed with appellants raising the following assignment of error:

> The trial court abused its discretion when it granted legal custody of the infant J.H. to maternal great aunt (H.H.) rather than the minor mother T.H. when there were no allegations of abuse or neglect concerning the infant, and when mother was primarily caring for the child.

{¶ 19} We review a trial court's judgment adopting a magistrate's decision to award legal custody of a minor child to a relative or other interested person for an abuse of discretion. *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶ 19. An abuse of discretion suggests that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 20} "Where a child has been adjudicated dependent, a trial court may award legal custody to a nonparent where it finds, by a preponderance of the evidence, that legal custody is in the child's best interests." *In re A.D.*, 6th Dist. Erie Nos. E-16-059, E-16-060, E-16-061, 2017-Ohio-6913, ¶ 31. "In making such a determination, 'courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the [child].'" *Id.* at ¶ 32, quoting *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25.

7.

{¶ 21} Appellants argue that T.H., as an unmarried mother, was entitled to the presumption of custody under R.C. 3109.042. The statute provides, in relevant part:

(A) An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation.

{¶ 22} Supporting this presumption, appellants claim that T.H. was taking excellent care of J.H. and attending online school and counselling. Appellants further contend that the court's concern regarding the safety of V.B.'s home was not reasonable in light of the fact that V.B. was never found to be the perpetrator of the abuse against her youngest child.

{¶ 23} We note that the above-quoted statute does not contemplate the fact that T.H. is a minor mother. Reviewing the evidence before the court, we find that the judgment was supported by a preponderance of the evidence. The court thoroughly explained its concerns regarding an award of legal custody to T.H. while she is in the custody of V.B. The infant that has serious injuries resided in V.B.'s home which she still shares with her husband. The safety concerns relate specifically to infants and young children who are unable to verbalize dangerous or abusive living conditions. Appellants' assignment of error is not well-taken.

8.

**{¶ 24}** On consideration whereof, we find that the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

JUDGE

Thomas J. Osowik, J. _____

JUDGE

Christine E. Mayle, P.J. _____
CONCUR.

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.