[Cite as *In re X.H.*, 2020-Ohio-3907.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

In re X.H.

Court of Appeals No. E-19-061

Trial Court No. 2017-JN-0003

<u>**DECISION AND JUDGMENT**</u>

Decided:  July 31, 2020

* * * * *

Anthony J. Richardson II, for appellant.

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Betty J. Burley, Assistant Prosecuting Attorney, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant-father, M.H., appeals the October 8, 2019 judgment entry of the Erie County Court of Common Pleas, Juvenile Division, which, reversed the magistrate's denial of appellee, Erie County Department of Job and Family Services' (ECDJFS) and grandmother, S.L.'s motions for legal custody, and awarded legal custody of his minor child, X.H., to S.L.  For the reasons that follow, we affirm.

{¶ 2} The relevant facts are as follows. On January 3, 2017, ECDJFS filed a complaint alleging that X.H., born in 2010, was a dependent and neglected child. The facts alleged that on December 1, 2016, police responded to appellant's home after a report that he had fallen. Upon arrival, they observed X.H. outside with appellant and in his underwear. Mother, H.L., was hospitalized at the time. Appellant appeared to be under the influence; he admitted to drinking and smoking marijuana. Subsequent drug testing was positive for marijuana and cocaine. A safety plan was implemented. The plan was terminated on December 20, 2016, after the parents engaged in treatment and had negative drug screens. Appellant's December 27, 2016 drug screen was positive for cocaine and the agency's complaint requested protective supervision of X.H., who would remain in mother's care with restrictions on unsupervised visits with appellant. On January 4, 2017, ECDJFS was awarded pre-dispositional emergency protective supervision of X.H. The initial case plan was filed on January 31, 2017, and required each parent complete a drug and alcohol assessment and a mental health assessment, submit to random drug screens, maintain sobriety, and allow unannounced home visits.

{¶ 3} On March 23, 2017, ECDJFS filed a motion for emergency temporary custody of X.H. The motion alleged that both parents had positive drug screens and mother failed to show for two screens. The motion was granted and X.H. was placed with his grandmother, S.L.

2.

{¶ 4} On March 30, 2018, ECDJFS filed a motion for legal custody to be awarded to S.L.; S.L. filed a motion for legal custody on March 8, 2019. A hearing on the motion was held on March 19, 2019, and the following evidence was presented.

{¶ 5} The first witness was Janie Jurn, caseworker from Erie County Child Support. Jurn testified as to the child support obligations of the parents and their payment histories which were admitted into evidence. Jurn stated that appellant was current with his child support obligation. As to H.L., she was in arrears and had not paid since April 2018.

{¶ 6} ECDJFS caseworker Tevon Oehling testified that on December 1, 2016, the agency became involved with the family following a late night incident where appellant was intoxicated and X.H. was in his sole care because H.L. was hospitalized. A safety plan was implemented which required that appellant and H.L. participate in drug and alcohol treatment and test negative. Oehling noted that H.L. was on probation following a drug possession charge. The safety plan was terminated at the end of December when appellant had a positive drug screen. Oehling testified that in January 2017, ECDJFS moved for and was granted protective supervision which left X.H. in H.L.'s care but allowed appellant only supervised contact with the child.

{¶ 7} Oehling testified in in March 2017, the agency gained temporary custody of X.H. following H.L.'s positive drug screen and failure to report to probation. X.H. was placed with his maternal grandmother, S.L. A case plan was implemented which required, in part, that the parents attend drug and alcohol counseling and submit to

3.

random drug screens. Oehling testified that the parents struggled with sobriety through the spring of 2017; they both were placed in residential programs, appellant's through the VA.

{¶ 8} Oehling testified that during her involvement there were no agency restrictions on the parents seeing each other but that they needed to work on being sober together. Oehling stated that H.L. completed Phase 1 but was then terminated from the program due to her seeing appellant past curfew. H.L. then re-engaged in services. Appellant completed his in-patient program and was provided veteran housing.

{¶ 9} Oehling testified that the parents began having positive drug screens in February 2018. She stated that the parents have tended to use drugs together. H.L. went into a three-month residential program. As to appellant, Oehling testified that in June 2018, he was still testing positive for cocaine and marijuana but that beginning in July he was testing positive for just marijuana. Also in July, appellant was cited for an OVI for alcohol. The parents' drug screen results were admitted into evidence.

{¶ 10} Since October 2018, H.L. has been living in a sober living house and visiting with X.H. there. Oehling stated that the home is like a condominium and that women with children have their own room and share the unit with a roommate. Oehling stated that H.L. has been in four different units since moving in and that there have been concerns about some of her roommates.

{¶ 11} Oehling stated that the parties were making "good progress" on their case plans. She noted that appellant was not testing clean but was attending treatment.

4.

Oehling testified that the agency was recommending that S.L. be granted custody. Oehling stated that as to H.L., though she has been attending treatment and testing clean, she still has not made the necessary behavioral changes. Oehling also stated that H.L. needed to become more financially stable.

{¶ 12} Oehling testified that X.H had an Individualized Education Program (IEP) and behavioral plans in place; he had a severe speech delay for which he receives therapy. She stated that X.H. is doing very well while in his grandmother's care and that she is keeping up with all appointments.

{¶ 13} As to visitation orders, Oehling stated that appellant should be permitted only supervised visits until his drug screens remain clean. As to H.L., Oehling felt that visits could be unsupervised.

{¶ 14} Oehling was questioned about appellant's health and military service. She stated that he is in his sixties, has heart issues, and walks with a cane. Appellant receives SSI and VA disability benefits.

{¶ 15} Out of order and with permission of the court, H.L. called Michael Frank to testify. Frank testified that he is Chief Probation Officer for the Erie County Probation Department. Frank testified regarding a letter summarizing H.L.'s performance while on probation in response to an inquiry surrounding her attempt to regain custody of X.H. The summary was written by a probation officer supervised by Frank and Frank reviewed and signed the letter. Frank stated that the letter indicated that although H.L. struggled at the beginning, she has been compliant with her probation.

5.

{¶ 16} Sue Prentice testified that she is secretary of the board at Genesis. She testified that Genesis on the Lake is a residential facility for women working on sobriety. The residents are also permitted to have children up to age 13 reside with them. Prentice stated that Genesis does not provide treatment but has implemented random drug screens. The screens generally take place when a resident returns from a weekend or overnight pass or if the house manager suspects drug use. Prentice stated that H.L. was slightly behind in her rent payments but had been consistently paying.

{¶ 17} Maternal grandmother, S.L., testified next. She stated that X.H. had been living with her for two and one-half years. S.L. stated that appellant, her daughter, H.L., and X.H. had lived in her home during two different time frames. S.L. testified that the parents would yell and threaten X.H. She stated that appellant threatened to hit X.H. with a belt with a gold buckle; he hid behind her. S.L. stated that she never observed marks on X.H.

{¶ 18} S.L. testified that when X.H. came to live with her he had developmental delays and behavioral issues. S.L. stated that he had meltdowns or temper tantrums. She stated that X.H. had been going to counseling but that it is not needed anymore. His behavior is much better in school and the behavioral plan may be terminated. S.L. indicated that X.H. does take medication for ADHD.

{¶ 19} S.L. testified that X.H. has a speech delay and has been evaluated at school and privately. He is receiving speech therapy. S.L. stated that X.H. is not cognitively delayed and is doing well in school. He is up-to-date on immunizations and dental care.

6.

{¶ 20} S.L. testified that her relationship with her daughter is strained but that she would like for it to improve. S.L. stated that H.L. is welcome in her home and she has no hesitation as to the length of her visitation which does not need to be supervised. S.L. stated that she is not comfortable with overnight visits at Genesis because of the transient nature of the occupants. S.L. testified that she believes that appellant's visitation needs to be supervised. She stated that so long as appellant is clean and sober she is willing to discuss the nature of the visitation.

{¶ 21} Court appointed special advocate (CASA), Patricia James, testified next. She was cross-examined about the source of some of her information regarding appellant. She admitted that the reports of cancelled visits, failure to call, and purported lack of money came from grandmother. James further admitted that she did not ask appellant whether the reports were true. James agreed that she has never been to appellant's home but had observed a few visitations between appellant and X.H. at the agency.

{¶ 22} James was questioned about the statement in her report that appellant's visitation should be supervised until he "provides proof of maintaining sobriety and stability." James acknowledged that appellant has maintained a household but needs to maintain sobriety, continue with his treatment, and be a "law abiding citizen."

{¶ 23} James agreed that since August 2018, she has had 16 contacts with grandmother, S.L., and only three contacts with mom, H.L. James clarified that many of the 16 contacts with S.L. were necessary to facilitate contact with X.H., who was in her care.

7.

{¶ 24} James testified that her recommendation that S.L. be awarded legal custody of X.H. was based on the fact that she has cared for him for over two years and supports his special educational and therapy needs. Regarding visitation, James testified that appellant's visitation should remain supervised and that S.L. be able to assess his sobriety. As for H.L., James felt that continued unsupervised visits were appropriate, that they could be "expanded," and that at some point H.L. could regain custody of X.H.

{¶ 25} Appellant then testified. He stated that he is an army veteran who served in operation Desert Storm where he sustained an injury to his leg and was honorably discharged. Appellant stated that he has chronic knee and shoulder pain and has had two heart attacks. He agreed that he self-medicates with marijuana.

{¶ 26} Appellant testified that he has six children and that he has never "whooped" any of them. He stated that he has never spanked or threatened X.H. He stated that he spent a lot of time with X.H., helping him with his schoolwork and his speech issues.

{¶ 27} Regarding visitation, appellant testified that he missed four to five visits due to his own medical appointments and the fact that he did not have any money to spend on X.H. and he did not want to disappoint him. Appellant agreed that he was not asking that he be awarded custody, but that H.L. should get custody because she is his mother and has always had a job. Appellant stated that if H.L. did not regain custody, he would agree to continuing supervised visits until he got "[him]self together"; thereafter, he indicated that at least two days per week, unsupervised, leading to overnight visits.

8.

Appellant stated that he would have no problem with S.L. supervising if she was awarded custody.

{¶ 28} Aubrey Oliver-Calvert testified that she is the Assistant Executive Director of Road to Hope which took over for Genesis on February 4, 2019. Oliver-Calvert testified that she oversees all the housing and that she is familiar with H.L. She stated that due to the length of H.L.'s sobriety, she is able to come and go as she pleases by signing in and out. Oliver-Calvert stated that there have been no problems with H.L.'s compliance with signing the sheets. She is also compliant with attending her 12-step sobriety meetings. Oliver-Calvert also stated that H.L. is up-to-date on her rent payments. Further, since Road to Hope began running the program all of H.L.'s drug screens (four) have been negative.

{¶ 29} Oliver-Calvert stated that residents can stay at Road to Hope indefinitely so long as they abide by the rules. If a resident's child reaches the age limit of 12, they assist the mother in finding suitable, alternate housing. Oliver-Calvert indicated that she is aware that H.L. has a nine-year-old son.

{¶ 30} Chemical dependency and mental health counselor, Angela Harris, testified that H.L. had been attending regular meetings, has taken responsibility for her addiction, and is doing very well and is nearing the end of her involvement with the counseling service. Similarly, H.L.'s Narcotics Anonymous sponsor, L.B., testified that she has seen great changes in H.L. in that she is actively seeking recovery, attending and participating

9.

in meetings, and has been clean for ten months. L.B. stated that H.L. is currently on step one of the 12-step program which is admitting powerlessness in the face of addiction.

{¶ 31} H.L. testified that she has worked at McDonald's since August 2018. She stated that she gets to work on time, stays late, and picks up extra shifts when needed. She stated that she is now eligible for a promotion to crew trainer.

{¶ 32} Prior to the events causing the removal of X.H. from the home, H.L. stated that X.H. was in speech therapy and had an IEP at school. She stated that she felt her life with X.H. was good. She provided for all his basic needs, did homework with him, and took part in all his school functions as well as social events like birthday parties.

{¶ 33} H.L. testified that she began using drugs at age 24-25, when the person she was dating introduced them to her. On the date of the hearing she was 39. H.L. admitted that she was convicted of possession of crack cocaine and that she is currently on probation. She stated that she has been in recovery for ten and one-half months, and had attempted recovery in 2001, 2002, and 2017.

{¶ 34} H.L. testified that she has been in a relationship with appellant off and on for 15 years. She admitted that the relationship was not "healthy" and that she currently wants to be alone. She stated that she expects appellant to be a clean and sober parent to X.H. H.L. stated that she voluntarily went into "detox" on May 15, 2017, and that on August 23, 2017, she moved into Genesis. She has been clean since checking into detox.

{¶ 35} Regarding her mother, S.L., H.L. stated that they have had an unstable relationship since she was 11 or 12, she does not feel welcome in S.L.'s home, and she

10.

feels that S.L.is trying to usurp her role as X.H.'s mother. H.L. admitted to getting some financial help from S.L. as late as 2016, but testified that she now pays all her own bills including a car payment, rent, and phone bill.

{¶ 36} H.L. stated that if she regained custody of X.H. she could modify her work hours to when he is in school or at his after school programs. She testified that she would continue to take X.H. to speech therapy and continue him on his IEP. H.L. stated she would leave him in his current school and the bus could pick him up at Genesis.

{¶ 37} During cross-examination, H.L. admitted that she has not paid child support since beginning her job at McDonald's, approximately seven months ago. H.L. further testified that she is about a month behind on her car payment. H.L. admitted to never contacting the school to see if she could get X.H.'s grades, not going to any school functions, and not attending his IEP meeting although she received a copy of the document after-the-fact. H.L. also admitted to walking out of some ECDJFS meetings.

{¶ 38} On May 17, 2019, the magistrate issued a decision denying the motions to award legal custody to S.L. The magistrate noted that the determining factor was the best interest of X.H. and proceeded to examine the factors under R.C. 3109.04(F). The magistrate then expressed that the best interest analysis is not limited to who can provide the best environment for the child which the magistrate acknowledged was clearly grandmother, S.L.; rather, looking at the reunification goal of the case plan and the general belief that children are better living with a parent and combined with the fact that

at the time or trial H.L. had "substantially complied" with the case plan, the magistrate concluded that it was in X.H.'s best interest to be returned to the custody of H.L.

{¶ 39} Regarding visitation, the magistrate ordered that S.L. have visitation with X.H. every other weekend and during the summer, Sunday through Friday. As to appellant, visitation was ordered to be supervised and at least one time per week until he had obtained sobriety. Supervision was to be provided by S.L. or a suitable third party.

{¶ 40} S.L. immediately filed objections to the decision and requested an extension to supplement with specific arguments; the extension was granted but the brief was not timely filed. ECDJFS similarly requested an extension then failed to timely file its brief.

{¶ 41} On October 8, 2019, the trial court first dismissed the objections because they were not supported by specific arguments. Further, in reviewing the magistrate's decision because the transcript was not provided to the court, it accepted and adopted the magistrate's findings of fact.

{¶ 42} The court then noted the magistrate's apparent difficulty in reconciling granting the legal custody motions when the mother had substantially completed the case plan requirements. The court acknowledged that this fact is to be considered but is not controlling in determining the best interests of the child. The court then reached a "different conclusion than the Magistrate's when considering the findings the Court ha[d] adopted." The court concluded that S.L. provided a more stable home for X.H. in terms of educational and therapy support, and that H.L. had ongoing financial difficulties and

12.

failed to participate in X.H.'s school services and other appointments. The court did note that the ECDJFS should have amended the case plan to reflect the true nature of their concerns and set forth more specific expectations.

{¶ 43} As to appellant, the court adopted the magistrate's recommendation regarding visitation. The court further ordered that:

[M.H.] be entitled to companionship with the child for such periods of time and at such frequency as he and [S.L.] may agree. Father's companionship time shall supervised by [S.L.], Kinship or a suitable third party, as [S.L.] may determine appropriate until such time as Father is able to substantiate that he has obtained sobriety at which time they can become unsupervised.

{¶ 44} This appeal followed with appellant raising two assignments of error for our review:

(1) The trial court committed reversible error by unreasonably limiting appellant's visitation time with his son, X.H.

(2) The trial court committed reversible error by granting temporary custody to the maternal grandmother against appellant's wishes and interest.

{¶ 45} As to appellant's first assignment of error, we review a juvenile court's decision regarding visitation for an abuse of discretion. *In re C.T.*, 6th Dist. Sandusky No. S-19-001, 2019-Ohio-3403, ¶ 8, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541

13.

N.E.2d 1028 (1989). A trial court abuses its discretion by issuing a judgment that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 46} Appellant argues that "severely limiting" his visitation solely due to his addiction is an abuse of discretion and punitive where he has been going "long periods of time sober from hard drugs," where there is no evidence that his marijuana usage would affect X.H., and where his addiction is a life-long condition. Reviewing the record in this case with special attention to the evidence presented at trial, we disagree.

{¶ 47} During appellant's testimony he agreed that he should not have custody of X.H. and that he was going back into rehab because he did not feel like the last time was long enough. When asked about his visitation preferences if grandmother were to get legal custody he stated:

Well, until I get myself together, I would take what I got now, but once I get myself together, I would like a little more time with him and I would like on visit – I would get my – stay clean and prove that I'm stayin' clean. I would like, you know, overnight visit and do things him * * * you know, maybe at least two days a week or somethin' like that. I mean, I'm not asking for that much, but to take him to movies and do stuff with him by myself, you know.

{¶ 48} Based on appellant's long history of drug use including up to the date of the hearing in this matter and his admission that he needed to get sober before being

awarded extended visitation, we cannot say that the court abused its discretion in adopting the magistrate's limited, supervised visitation order.

{¶ 49} Appellant next contends that the trial court's October 8, 2019 judgment regarding visitation is "inconsistent and confusing." Specifically, appellant notes that the court initially adopts the magistrate's decision regarding visitation but then proceeds to leave visitation to the discretion of S.L.

{¶ 50} Reviewing the magistrate's and the trial court's judgment, we find that they can be read consistently. The magistrate ordered that appellant have supervised visitation "at least once per week" until he is able to prove that he had attained sobriety. The court's judgment stated that it adopted the magistrate's decision regarding visitation. The court went on to provide that appellant's visitation shall be for such periods of time and frequency as he and S.L. shall agree and that upon demonstration of his sobriety, the visits can become unsupervised. In our view, the judgment requires that appellant, at a minimum, have visitation one time per week; the amount may be adjusted upon agreement of the parties. During the hearing, appellant stated that he had no problem with S.L. supervising visitation as she had done it previously.

{¶ 51} Based on the foregoing, we find that the trial court did not abuse its discretion in the visitation awarded to appellant. Appellant's first assignment of error is not well-taken.

{¶ 52} In his second assignment of error, appellant argues that the trial court erred by awarding legal custody to grandmother, S.L. We review a trial court's judgment

15.

adopting or rejecting a magistrate's decision to award legal custody of a minor child to a relative or other interested person for an abuse of discretion. *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶ 19.

{¶ 53} ECDJFS argues that appellant lacks standing to appeal the court's award of custody to S.L. Standing to appeal a final order of the juvenile court is controlled by R.C. 2501.02 and the common law principal that an appeal can be filed only by "'a party aggrieved by the final order appealed from. Appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting the appellant.'" *State ex rel. Winfree v. McDonald*, 147 Ohio St.3d 428, 2016-Ohio-8098, 66 N.E.3d 739, ¶ 8, citing *State ex rel. Gabriel v. Youngstown*, 75 Ohio St.3d 618, 619, 665 N.E.2d 209 (1996), quoting *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160, 42 N.E.2d 758 (1942), syllabus.

{¶ 54} More specifically,

> "a parent has standing to challenge the trial court's failure to grant a
> motion for legal custody filed by a non-parent because the court's denial of
> that motion led to a grant of permanent custody to the children services
> agency, which impacted the residual rights of the parent. * * * The parent
> has standing to challenge only how the court's decision impacted the
> parent's rights, however, not the rights of the third party."

*In re R.V.*, 6th Dist. Lucas Nos. L-10-1278, L-10-1301, 2011-Ohio-1837, ¶ 15, quoting *In re J.J.*, 9th Dist. Summit No. 21226, 2002-Ohio-7330, ¶ 36.

16.

{¶ 55} Thus, appellant's standing is limited to how the court's award of legal custody to S.L. specifically impacted his parental rights. Under this limited scope, appellant's argument is that he would have received more visitation time with X.H. if H.L. had been awarded legal custody.

{¶ 56} "Where a child has been adjudicated dependent, a trial court may award legal custody to a nonparent where it finds, by a preponderance of the evidence, that legal custody is in the child's best interests." *In re A.D.*, 6th Dist. Erie Nos. E-16-059, E-16-060, E-16-061, 2017-Ohio-6913, ¶ 31. In making such a determination, the magistrate properly looked to the best interest factors of R.C. 3109.04(F)(1), and the court adopted the findings.

{¶ 57} Upon review, we cannot say that the trial court abused its discretion when it granted S.L.'s and ECDJFS' motions for legal custody. Mother's substantial compliance with the case plan is not dispositive on the issue of reunification. *See In re E.Z.-S.*, 6th Dist. Fulton No. F-18-006, 2019-Ohio-1177, ¶ 33, citing *In re D.T.*, 8th Dist. Cuyahoga Nos. 100970, 100971, 2014-Ohio-4818, ¶ 23. The principal consideration is the child's best interest. *Id.* Accordingly, appellant's second assignment of error is not well-taken.

{¶ 58} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Erie County Court of Common Pleas, Juvenile

Division, is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

Gene A. Zmuda, P.J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDE

**ZMUDA, P.J., concurring.**

{¶ 59} I agree with the majority's conclusion that the trial court did not abuse its discretion in awarding legal custody of X.H. to S.L. I write separately to note that I would reject appellant's inconsistency argument under his first assignment of error

outright, without determining whether the magistrate's decision and the trial court's judgment are consistent with one another on the issue of visitation.

{¶ 60} Under Civ.R. 53, the trial court, in ruling on objections to a magistrate's decision, is required to conduct an independent examination of the record, after which it may adopt, reject, or modify the magistrate's decision. This rule does not require that the trial court craft a judgment that is consistent with the magistrate's decision. On the contrary, the rule expressly provides the trial court with the authority to craft its own decision, which then becomes the controlling, final judgment of the court, binding upon the parties before it. For this reason, I would summarily reject appellant's consistency argument, and I would not attempt to read the trial court's judgment in light of the magistrate's decision.

{¶ 61} The salient issue for this court is whether, under an abuse of discretion standard, the trial court's final judgment is consistent with the record before the court. The record amply demonstrates that the court's judgment is consistent with the record without any superfluous analysis or reconciling of the trial court's decision with the magistrate's recommendation.

{¶ 62} With this clarification in mind, I concur.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.