[Cite as *In re J.D.*, 2024-Ohio-1443.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.D.

Court of Appeals No. L-23-1280

Trial Court No. JC 23294088

**DECISION AND JUDGMENT**

Decided: April 12, 2024

* * * * *

David T. Rudebock, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SULEK, P.J.**

**{¶ 1}** In this expedited appeal, appellant-maternal grandmother N.O. appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, which denied N.O.'s third-party complaint for custody of the minor child J.D. and awarded permanent custody of that child to appellee Lucas County Children Services ("LCCS"). For the reasons that follow, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} J.D. was born on February 14, 2022, to mother J.C. No father was ever identified. LCCS became involved immediately because J.D. tested positive for narcotics at birth. A safety plan was implemented whereby J.D. was placed in the home of maternal cousin A.C. On March 9, 2022, LCCS filed a complaint in dependency, abuse, and neglect in light of mother's struggles with substance abuse. The trial court adjudicated J.D. a dependent and neglected child on April 21, 2022, and placed him in the temporary custody of LCCS.

{¶ 3} Shortly before the adjudication, on April 19, 2022, LCCS placed J.D. with maternal cousin M.B. due to concerns with A.C.'s stability and her ability to pass a home study. A.C. had identified M.B. as a backup care provider, and LCCS learned that as of April 19, 2022, A.C. had already left J.D. in M.B.'s care for approximately one week.

{¶ 4} The case progressed with LCCS providing case plan services to mother towards the goal of reunification. Tragically, mother passed away on March 17, 2023. On April 19, 2023, N.O. filed a third-party complaint for custody of J.D. Approximately one month later, on May 12, 2023, LCCS moved for permanent custody.

{¶ 5} The trial court conducted a hearing on the motion for permanent custody and on the third-party complaints on September 26, 2023.[1] Over the repeated objection of

_____

[1] A.C. also filed a third-party complaint for custody that was considered by the trial court. A.C., however, has not filed an appeal from the trial court's judgment, therefore facts and issues pertaining to her third-party complaint are not before this court and will not be discussed.

2.

LCCS, N.O. was permitted to participate in the hearing and to cross-examine each of the witnesses.

{¶ 6} At the hearing, LCCS caseworker Laura Rubley testified that when J.D. was born, LCCS contacted N.O. to inquire about placement because N.O. was already caring for two other children that had been removed from mother. According to Rubley's review of LCCS's records, N.O. declined to accept placement at that time. Rubley also spoke with her about taking placement of the child in April 2022, and again N.O. declined. Rubley testified that N.O. did not raise the issue of placement again until February 2023.

{¶ 7} Rubley also testified that N.O. has not had any visits with J.D., and that she recommended that M.B. not allow the type of visits that N.O. was requesting. N.O. would seek to pick up J.D. or have him dropped off at her house for unsupervised visits for hours at a time. While generally such a request is not unusual from a grandparent, in this case Rubley felt it was inappropriate because J.D. has no relationship with N.O. and does not know who she is. Further, Rubley had concerns that N.O. was allowing mother to babysit her other children while mother was in active addiction. Rubley testified that the last visitation attempt occurred in February 2023, when N.O. was scheduled to go to M.B.'s house. Unfortunately, a tree fell on M.B.'s house, so she contacted N.O. to make alternative arrangements to either meet at N.O.'s house, meet somewhere else, or go to dinner together. In response, N.O. blocked M.B.'s messages. N.O. did not contact Rubley about setting up official visitations until July 2023.

3.

**{¶ 8}** When asked why LCCS was seeking permanent custody and not pursuing granting custody to N.O., Rubley testified that while N.O. expressed her love for J.D., she does not know him and appears to not have taken any meaningful action to get to know him. Rubley further explained that some of the relatives were harassing M.B. and she felt that an award of permanent custody would mitigate some of that harassment. Specifically, she testified that N.O. was demeaning to M.B. by making statements that M.B. was not actually family and that it was as if J.D. was in foster care.

**{¶ 9}** M.B. indicated that she is willing to foster relationships between J.D. and the rest of the family. M.B. maintains strong relationships with the maternal grandfather's side of the family through family gatherings, events, and vacations together. Additionally, M.B. had arranged frequent visits with A.C. until LCCS recommended that they stop. M.B. testified that she is also willing to facilitate visits with N.O., but on the approximately three to five occasions where they have scheduled something N.O. simply would not appear. M.B. explained that she has had difficulty since she accepted placement of J.D., because A.C. and N.O. now no longer consider her to be part of the family even though she is a maternal cousin through adoption.

**{¶ 10}** N.O. testified that shortly after J.D. was born, LCCS contacted her about taking placement of the baby. The LCCS worker would not tell her why though, and said that she should talk with mother. Mother initially lied to N.O., and N.O. believed that for the first few days mother was staying with J.D. at A.C.'s house where she could get some assistance. N.O. did not think that mother was using drugs at the time. It was only later

4.

that N.O. learned that mother tested positive for drugs and J.D. had been removed from her at the hospital and placed with A.C. for that reason.

{¶ 11} N.O. stated that she then contacted LCCS to ask about getting custody of J.D., but was never able to speak with the caseworker. Between March and April 2022, N.O. attempted to contact LCCS at least nine or ten times without any success. During this time, N.O. had frequent visits with J.D. through her relationship with A.C. But since J.D. was placed with M.B., she has not had any visits with him even though she attempted to coordinate visits with M.B. through Facebook messenger. The last time that N.O. saw J.D. was at mother's funeral in March 2023.

{¶ 12} The final witness to testify was Brittney Ramos, the court-appointed special advocate ("CASA"). Ramos testified that although she learned immediately upon her involvement about N.O.'s care for mother's other children, she did not contact N.O. because she was told that N.O. was not interested in taking placement of J.D. Further, when she did speak with N.O. during her investigation, she was concerned that N.O. remarked on several occasions that if J.D. were removed from M.B.'s care he would be fine because he was a baby and would eventually forget about it. Ultimately, Ramos concluded that J.D. was receiving excellent care with M.B., that he was strongly bonded to her having spent the vast majority of his life with her, and that it would be in his best interest to award permanent custody to LCCS to pursue his adoption by M.B.

{¶ 13} Following the hearing, in its November 15, 2023 judgment, the trial court awarded permanent custody of J.D. to LCCS, and denied N.O.'s third-party complaint for custody.

{¶ 14} Regarding the award of permanent custody, the trial court found that R.C. 2151.414(B)(1)(a) applied and that J.D. could not be placed with mother within a reasonable period of time or should not be placed with mother because mother "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home" as set forth in R.C. 2151.414(E)(1). Alternatively, the trial court found that R.C. 2151.414(B)(1)(d) applied in that J.D. "has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period." Further, the trial court found that permanent custody to LCCS was in the best interest of J.D. upon consideration of the factors in R.C. 2151.414(D)(1)(a)-(e). Specifically, it found that J.D. has been placed with maternal cousin M.B. for nearly his entire life and is thriving in her care, that M.B. has made attempts to foster familial relationships, that M.B. has expressed interest in adopting J.D., and that his environment with M.B. offers him security, stability, and consistency.

{¶ 15} Regarding the denial of N.O.'s third-party complaint, the trial court reasoned that M.B. was a maternal relative, that J.D. has been in her care for approximately 17 months at the time of the permanent custody hearing and is thriving in that environment, and that it would be detrimental to J.D.'s well-being to change his

6.

placement. Further, it found that N.O. failed to demonstrate that M.B. is an unfit caretaker and also found that N.O. contributed to the discord in the family by making unfounded accusations against M.B.

## II. Assignments of Error

{¶ 16} N.O. timely appealed the trial court's November 15, 2023 judgment and asserts two assignments of error for review:

> 1. The trial court abused its discretion when it denied maternal grandmother's Complaint for Third Party Custody in the face of evidence that the agency's chosen caregiver was not committed to facilitating a relationship between the child here and his sibling.

> 2. The trial court abused its discretion by finding that neither parent had substantially remedied the problem(s) which caused the child to be placed outside the home, because there was no testimony as to why the child was initially removed, pursuant to R.C. 2151.414(E)(1) because there was no evidence presented as to why the child was removed in the first place (sic).

## III. Analysis

{¶ 17} Under her first assignment of error, N.O. challenges the trial court's denial of her third-party complaint for custody of J.D. "Where a child has been adjudicated dependent, a trial court may award legal custody to a nonparent where it finds, by a preponderance of the evidence, that legal custody is in the child's best interests." *In re*

7.

*A.D.*, 6th Dist. Erie Nos. E-16-059, E-16-060, E-16-061, 2017-Ohio-6913, ¶ 31, citing *In re B.L., L.L.*, 6th Dist. Lucas No. L-15-1030, 2016-Ohio-738, ¶ 7. The trial court's legal custody determination is reviewed under an abuse of discretion standard. *Id.*, citing *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190, ¶ 19. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 18} In making a legal custody determination, "courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the [child]." *In re A.D.* at ¶ 32, quoting *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25.

{¶ 19} R.C. 2151.414(D)(1) instructs the trial court to consider a non-exhaustive list of factors when determining the best interest of the child, which include:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

8.

agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and

whether that type of placement can be achieved without a grant of

permanent custody to the agency.

{¶ 20} Here, N.O. argues that the trial court abused its discretion by not giving primary importance to the relationship between J.D. and his sibling that is under her care. She contends that she is the person in the best position to foster that relationship. She further argues that M.B. is not an appropriate kinship placement because M.B. has refused to pursue a relationship with J.D.'s sibling due to a family feud.

{¶ 21} In its decision, however, the trial court did not focus solely on J.D.'s potential relationship with his sibling, but also considered J.D.'s actual and well-bonded relationship with M.B., his relationship with the maternal grandfather's family, his placement with M.B. for 17 of the 19 months of his life, and the CASA's recommendation that J.D. remain with M.B. on the path towards adoption. Further, the trial court considered that N.O. declined opportunities to accept J.D.'s placement with her, has not followed through on visits with J.D., does not presently have a relationship with J.D., and has contributed to the discord in the family by making unfounded accusations against M.B. In light of these considerations, the trial court's decision was neither arbitrary, unreasonable, or unconscionable. Therefore, the trial court did not abuse its discretion when it denied N.O.'s third-party complaint for custody.

9.

{¶ 22} Accordingly, N.O.'s first assignment of error is not well-taken.

{¶ 23} In her second assignment of error, N.O. argues that the trial court erred when it found that mother failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home as set forth in R.C. 2151.414(E)(1) where no evidence was presented as to the reason why J.D. was initially removed.

{¶ 24} In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find two things by clear and convincing evidence:  (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) apply, and (2) that permanent custody is in the best interests of the child.  R.C. 2151.414(B)(1).  Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.  *In re T.J.*, 2021-Ohio-4085, 180 N.E.3d 706, ¶ 36 (6th Dist.), citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  *Cross* at paragraph three of the syllabus.

{¶ 25} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence."  *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28.  "Reversal is proper

10.

only where its determined, after weighing the evidence and all reasonable inferences including the credibility of the witnesses, that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." *In re S.S.*, 6th Dist. Lucas No. L-22-1219, 2023-Ohio-1663, ¶ 27, citing *In re T.J.*, 2021-Ohio-4085, 180 N.E.3d 706, ¶ 40 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 26} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child,

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent if any of sixteen factors are met.

11.

{¶ 27} Here, the trial court found that R.C. 2151.414(E)(1) applied to mother. That section states,

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 28} Contrary to N.O.'s assertion, testimony from the permanent custody hearing reveals that J.D. was removed from mother's care because of substance abuse concerns. Mother then died without having completed her substance abuse treatment. Therefore, the trial court's finding that J.D. could not be placed with mother within a reasonable time or should not be placed with mother is not against the manifest weight of the evidence.

{¶ 29} Accordingly, N.O.'s second assignment of error is not well-taken.

12.

## IV. Conclusion

**{¶ 30}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  N.O. is ordered to pay the costs of this appeal pursuant to App.R. 24.

                                                                        Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                        _____
                                                                        JUDGE

Myron C. Duhart, J.

                                                            _____
Charles E. Sulek, P.J.                                      JUDGE
CONCUR.

                                                            _____
                                                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.